Michael F. Ram (SBN 104805)
mram@forthepeople.com
Marie N. Appel (SBN 187483)
mappel@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Telephone: (415) 358-6293

Benjamin R. Osborn (to be admitted *Pro Hac Vice*)
102 Bergen St.
Brooklyn, NY 11201
Telephone: (347) 645-0464
Email: ben@benosbornlaw.com

Sam Strauss (to be admitted *Pro Hac Vice*)
sam@turkestrauss.com
Raina Borrelli (to be admitted *Pro Hac Vice*)
raina@turkestrauss.com
TURKE & STRAUSS LLP
613 Williamson St., Suite 201
Madison, Wisconsin 53703-3515
Telephone: (608) 237-1775
Facsimile: (509) 4423

*Attorneys for Plaintiff and the Proposed Class*

THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NICHOLAS KIS, on behalf of himself and all others similarly situated,<br><br>                    Plaintiff,<br><br>v.<br><br>COGNISM INC.,<br><br>                    Defendant. | Case No.<br><br>CLASS ACTION COMPLAINT FOR VIOLATION OF CAL. CIV. CODE § 3344; CAL. PEN. CODE § 631; CAL. PEN. CODE §§ 630 *et seq.*; CALIFORNIA MISAPPROPRIATION OF NAME OR LIKENESS; AND CALIFORNIA UCL.<br><br><u>CLASS ACTION COMPLAINT</u><br><u>**JURY TRIAL DEMANDED**</u> |

**NATURE OF ACTION**

1.      Plaintiff and members of the proposed classes (the "Classes") are private individuals who have no relationship with the Defendant, Cognism Inc., or with the websites that Defendant owns and operates at www.cognism.com and www.kaspr.io.  Plaintiff and the Classes have never used cognism.com or kaspr.io, nor did they provide their names, contact information, job titles, places of work, locations, or any other personal information to Cognism.

2.      Plaintiff was seriously distressed to discover that Cognism is using his name, personal information, and persona to advertise paid subscriptions to cognism.com and kaspr.io.

3.      Plaintiff and the Classes did not consent to Cognism using their names, contact information, job titles, places of work, locations, and other personal information to promote cognism.com and kaspr.io subscriptions. Nor did they consent to Cognism selling access to their personal information as part of its subscription products.

4.      Cognism.com is a prospecting tool for business to business ("B2B') salespeople and marketers. Cognism advertises that, with a subscription to Cognism.com, a marketer can "[b]uild highly targeted audiences for your marketing campaigns" by "[b]uilding personas" that allow the marketer to "serve your ads to people who are most likely to respond."[1]

5.      Cognism advertises that cognism.com subscribers "can identify key decisions makers in [target] organizations [who are] actively looking for a product or service." Cognism.com informs the subscriber "which target accounts are actively researching intent 'topics' relevant to a business." Cognism tracks the topics the decision maker searches on the web along with additional factors such as "Average time on page," "Scrolling speed," and whether the decision maker "Reach[ed] the end of the page." This information allows Cognism to determine "the intent behind a website visit," and therefore to "[d]etect when IDEAL

---

[1] The quoted text appears on www.cognism.com.

customers are searching for solutions like yours."[2]

6.   Cognism.com provides a searchable database containing names, contact information including personal "mobile number[s]," locations, job titles, places of work, and other information about millions of professionals. B2B salespeople and marketers search for prospects by entering desired characteristics of the target audience into the Cognism.com search page. Users can also search for an individual name. In response to a search, Cognism.com returns a list of profiles containing names, contact information including mobile telephone number, and additional personal information.  B2B salespeople and marketers use the provided information to contact individuals like Plaintiff and the Class with unsolicited promotions.

7.   Cognism advertises that its "firmographic and technographic data" allow salespeople and marketers "to send more personalised messages" to "build relationships with the right prospects in your target accounts."[3] That is, a marketer or salesperson using Cognism.com will be able to "build relationships" quickly with sales prospects because, with the help of Cognism.com's database, the marketer or salesperson will already know the target's name, location, personal mobile phone number, job title, and the topics for which the target and her colleagues have recently searched  on the web.

8.   Cognism advertises Cognism.com subscriptions by displaying profiles of the Plaintiff and Class members on the Internet showing their names, contact information, job titles, places of work, location, and other personal information. Many profiles include photographs.

9.   Cognism offers free trials of cognism.com to potential subscribers. Free trial users may search for and view the profiles in the cognism.com database for a limited time, typically 48 hours.

10.   Free trial users receive some, but not all, of the functionality available to paying

---

[2] The quoted text appears on www.cognism.com, with the exception of the last quotation, which is from a promotional video published by Cognism on YouTube, available at https://www.youtube.com/watch?v=HlSVblYmvlk.
[3] The quoted text appears on www.cognism.com.

cognism.com subscribers. For example, free trial users who attempt to export Plaintiff's and Class members' profile information to an excel spreadsheet or third-party CRM ("customer relationship management") platform receive a notice that "[e]xporting is limited to 25 contacts at a time without bulk credits." Bulk credits are available only to paying subscribers. Free trial users also do not have access to "Intent" data about Plaintiff and the Class. "Intent" data is information about the prospects' browsing behavior on the Internet.

11.     After the free trial expires, trial users who attempt to search and view information about Plaintiff and Class members are informed they must purchase a subscription to cognism.com.

12.     Cognism also advertises cognism.com subscriptions by sending "25 free leads" to prospective subscribers. Prospective subscribers receive 25 profiles containing names, contact information, and other personal information. Prospective subscribers who attempt to search or view additional profiles are informed they must purchase a subscription to cognism.com.

13.     Cognism does not sell cognism.com subscriptions to the general public, nor can the general public access profiles on cognism.com. To gain access to the free trial or the 25 free leads, prospective subscribers must create an account with Cognism using a corporate email address. Prospective subscribers must also attend a live demo session with a Cognism sales representative before the free trial begins.

14.     The cost of subscription to cognism.com exceeds $10,000 per year.

15.     Cognism advertises that paying subscribers receive a variety of services. Subscribers receive "Intent data" about "business web user's observed behavior – specifically web content consumption – that provides insight into their interests." Cognism will inform the subscriber which "articles and reviews" the prospect has read, which "whitepapers" the prospect has downloaded, and what "websites" the prospect has visited.[4]

_____

[4] Quotations from www.cognism.com and a promotional video published on YouTube by Cognism, available at https://www.youtube.com/watch?v=L4s2kXOWPLg&t=3s.

16.     Paying subscribers also receive the ability to search, view, and export to Excel or a CRM the profiles of millions of individuals. Each profile contains the name, job title, and contact information including mobile phone number of the individual.

17.     Paying subscribers also receive company-level data. Cognism.com provides information about companies' "industry," "size," the "technologies" they use, and their location. Cognism.com also informs the subscriber about which companies are "hiring" and have recently received "funding."[5]

18.     Cognism publishes a webpage at cognism.com/our-data that describes how it collects the names, contact information, job titles, and other personal information in its profiles.

19.     According to Cognism, the "first data layer" is "community-sourced data," which comes from "members of our community who allow us to match contact information stored in signature blocks to business professionals in our database."

20.     Cognism collects "community-sourced data" by installing software on subscribers' computers that automatically captures, intercepts, and stores all outgoing and incoming emails. Cognism reads the content of the emails it captures, intercepts, and stores. If the content of an intercepted email includes a signature block with contact information, Cognism adds the contact information captured from the email to its profile about the individual to whom the signature block corresponds.

21.     Thus, when a non-Cognism subscriber sends an email to, or receives an email from, a Cognism subscriber, the contents of that email are captured, intercepted, stored, and read by Cognism without the non-Cognism subscriber's knowledge or consent.

22.     As described in Cognism's own promotional materials, Cognism obtains individuals' contact information by surreptitiously intercepting, capturing, and reading those individuals' emails and extracting the contact information provided in email signature blocks.

---

[5] Quotations from www.cognism.com.

23.     Cognism then "confirm[s]" the accuracy of the contact information it surreptitiously extracts from emails by "monitor[ing] publicly available information across millions of corporate websites," which adds "an additional layer of accuracy."

24.     Like cognism.com, kaspr.io is a prospecting tool for B2B salespeople and marketers. Kaspr.io is owned and operated by Cognism. Cognism advertises that kaspr.io is an "All-in-one Lead Generation Tool" that "centralizes the contact details left by Internet users on the web." Kaspr.io distributes a web extension for the Google Chrome web browser. The tagline for the Chrome extension is "Kaspr: Get Anyone's Phone Numbers and Emails."

25.     Cognism advertises kaspr.io subscriptions by (1) allowing any user to download the kaspr.io web extension for free, and (2) providing five free "credits" to the user. Credits can be spent on actions like revealing a prospect's phone number, email, or adding the prospect to a list of prospects on the user's kaspr.io "dashboard."

26.     The kaspr.io extension works in conjunction with the professional networking site LinkedIn. B2B marketers and salespeople who download the kaspr.io extension may search and have searched for Plaintiff and Class members on LinkedIn. Once the marketer or salesperson locates the profile of a prospect they want to contact, the marketer or salesperson can use the kaspr.io extension to reveal additional personal information about the prospect, over and above the information the prospect chose to share on their LinkedIn profile. Such information often includes the individual's personal phone number and email.

27.     After users expend their allowance of five free "credits" on Class member contact information, users who attempt to reveal contact information for additional Class members are informed they much purchase a kaspr.io subscription.

28.     Kaspr.io offers several subscription plans, each offering a different number of "credits" per month that can be spent on revealing contact information, and a different set of supplementary services that kaspr.io provides in addition to contact information.

29.     A "Kaspr Startup" plan costs 30 Euros[6] per month and provides 50 credits. Subscribers of the "Kaspr Startup" plan also receive the ability to export contacts, performance statistics, team management services, and customer support.

30.     A "Kaspr Enterprise" plan costs 45 Euros per month and provides 100 credits. In addition to the services provided to "Kaspr Startup" subscribers, subscribers of the "Kaspr Enterprise" plan also receive CRM integration and the use of a "Sales Automation" tool provided by Kaspr.

31.     A "Custom" plan is individually negotiated. In addition to the services provided to a "Kaspr Enterprise" subscriber, subscribers of the "custom" plan also receive access to an API ("Application Programming Interface") allowing them to integrate Kaspr data into custom-built application.

32.     Cognism is the sole author, designer, and implementor of the advertising techniques and profiles giving rise to this lawsuit. Cognism does not host user-generated content on cognism.com or kaspr.io. Cognism is the sole curator, designer, and creator of the content described in this Complaint, including: the profiles representing Plaintiff and Class members; the trial programs through which potential subscribers receive free time-limited access to cognism.com and five free "credits" on kaspr.io; the on-site messages soliciting paid subscriptions; and the services that allow paying subscribers to track Plaintiff's and Class members' web behavior, including tracking what articles they read and what webpages they visit.

33.     Plaintiff's and Class members' names, personal information, contact information, photographs, likenesses, and personas have commercial value. This commercial value is demonstrated by the exploitation of Plaintiff's and Class members' names, personal information, contact information, and photographs for commercial gain by Cognism and Cognism's competitors.

---

[6] As of the date of filing, the exchange rate between Euros and US dollars is approximately one-to-one.

34.     Cognism appropriated Plaintiff's and Class members' names, personal information, and personas without permission or consent from Plaintiff or Class members.

35.     Consent is not all or nothing. Plaintiff and Class members may have shared their names, personal information, contact information, and job histories with companies or the government in a variety of contexts. For example, Plaintiff or Class members may have consented to the posting of their names, work histories, and photographs on the website of a company for which they work, or on a professional networking site like LinkedIn.

36.     But Plaintiff and Class members did not consent to the commercial use of their personal information and personas to promote subscriptions to two websites with which they have no relationship, and which they have no interest in promoting.

37.     Plaintiff and Class members did not consent to their emails being surreptitiously captured, intercepted, and read by Cognism, nor did they consent to Cognism extracting their contact information from the signature blocks included in the content of their emails.

38.     California law recognizes individuals' intellectual property and privacy rights in controlling the use of their names, photographs, likenesses, and personas for commercial purposes.

39.     By using Plaintiff's and Class members' names, likenesses, photographs, and personas in advertisements for website subscriptions without consent, Cognism has violated their intellectual property and privacy rights. Plaintiff and Class members have the right not to have their personas exploited to promote a product with which they have no relationship and no interest in supporting. Plaintiff and Class members have an economic interest in their personas, which Cognism has stolen, and a privacy interest in preventing the commercial exploitation of their personas, which Cognism has violated.

40.     By intercepting, capturing, and reading the contents of Plaintiff's and Class members' email communications to extract contact information contained in email signatures, Cognism has violated their privacy rights. Plaintiff and Class members have the right not to have their communications intercepted and eavesdropped upon.

41.    By these actions, Cognism has violated the California Right of Publicity, codified in Cal. Civ. Code § 3344; California common law prohibiting misappropriation of a name or likeness; the California Invasion of Privacy Act ("CIPA"), codified in Cal. Pen. Code §§ 630 *et seq.*; and California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*.

42.    Plaintiff and Class members have suffered injury through the unlawful taking of their valuable intellectual property; through the invasion of their privacy rights protected by statute and common law; through Cognism's unlawful profiting from its exploitation of their names, personas, personal information, and the content of their emails; and through harm to peace of mind.

43.    Plaintiff and Class members are entitled to relief including statutory damages, disgorgement of profits, royalties for the use of their names and personas, restitution of the value of their names and personas, an injunction prohibiting Cognism's unlawful conduct, the award of attorneys' fees, expenses, and costs, and declaratory relief.

## JURISDICTION AND VENUE

44.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) (the Class Action Fairness Act ("CAFA")), because: (A) members of the putative Classes are citizens of a state different from at least one defendant. Defendant Cognism Inc. is incorporated in Delaware and has its principal place of business in the U.S. in either New York, New York, or in Boston, Massachusetts. Plaintiff is a citizen and resident of California who seeks to represent classes of California residents. (B) The proposed Classes consist of at least 100 members. A search of the Cognism database limited to government employees in the Northern District of California returned over 10,000 results. The Cognism database comprises millions of California residents, and therefore the Cognism Class comprises millions of people. Similarly, Kaspr advertises its website using the LinkedIn profiles of millions of California residents. Therefore, the Kaspr Class also comprises millions of people. And (C) the amount in controversy exceeds $5,000,000 exclusive of interest and costs. Cal. Civ. Code § 3344 provides for statutory damages "equal to the greater of seven hundred fifty dollars ($750) or the actual damages suffered," as

well as "any profits from the unauthorized use." The statute also allows for punitive damages and the award of attorneys' fees and costs. Cal. Pen. Code § 637.2(a) provides for statutory damages of "Five thousand dollars ($5,000) per violation." Because Cognism uses the names and personal information of millions of Class members to advertise Cognism and Kaspr subscriptions in violation of § 3344, and because Cognism has read the contents of private emails sent and received by millions of Class Members without consent in violation of §§ 631, 632, and 637, the amount in controversy is well over the jurisdictional limit.

45.     This Court has personal jurisdiction over Plaintiff's claims and those of the unnamed Class members. Cognism maintains substantial connections to the state of California, and those connections are closely entwined with the wrongdoing in this case.  Plaintiff resides in this District.

46.     Plaintiff's and Class members' claims arise from (1) Cognism's non-consensual use of their names, likenesses, and personas to advertise Cognism and Kaspr subscriptions; and (2) Cognism's unlawful interception of, eavesdropping on, and/or disclosure of their email communications. Cognism purposefully reached into the state of California to conduct these actions.

47.     Cognism uses Plaintiff's and California Class members' names, likeness, and personas to advertise subscription services to B2B marketing professionals in California.

48.     Cognism purchases a booth at and will be attending the 2023 "B2B Marketing Expo" in Los Angeles, California. *See* https://www.b2bmarketingexpo.us/exhibitors/cognism/. Cognism is attending for the purpose of selling its subscription products to businesses in California.

49.     Cognism is registered to do business in the state of California and has a designated agent in Sacramento, California.

50.     Venue is appropriate pursuant to 28 U.S.C. § 1391(b). A substantial portion of the events and conduct giving rise to the violations alleged in this complaint occurred in this district and Plaintiff resides in this District.

## PARTIES

51.    Plaintiff Nicholas Kis is a citizen of California. Mr. Kis resides in Concord, California. Mr. Kis has never used or subscribed to the websites cognism.com or kaspr.io.

52.    According to its registration with the state of California, Defendant Cognism Inc. is a Delaware corporation with its principal office in New York, New York.

53.    Cognism is a private company. Plaintiff is unaware of its corporate structure beyond what Plaintiff can determine from Cognism's website and from its registration with the state of California. Cognism's website reports that the company is headquartered in London, England, and maintains its principal U.S. office in Boston, Massachusetts.

54.    Cognism owns and operates the websites www.cognism.com and kaspr.io.

## FACTUAL ALLEGATIONS

55.    Plaintiff Nicholas Kis has no relationship with Cognism. He is not a subscriber and has never used Cognism.com or Kaspr.io.

56.    Mr. Kis did not give consent to Cognism to use his name, likeness, personal information, or persona in any way. Had Cognism requested his consent, Mr. Kis would not have provided it.

57.    Mr. Kis did not give consent to Cognism to intercept, capture, store, or read the content of emails he sent or received. Had Cognism requested his consent, Mr. Kis would not have provided it.

**Cognism uses Plaintiff's persona to advertise subscriptions to www.cognism.com**

58.    Cognism uses Mr. Kis' name and persona in advertisements promoting paid subscriptions to Cognism.com.

59.    Cognism displays a profile of personal information about Mr. Kis on www.cognism.com, which Cognism intends to be used by B2B marketers and salespeople who wish to contact Mr. Kis with unsolicited promotions.

60.     The profile accurately states Mr. Kis' name, city of residence, mobile phone number, email address, place of work, and job title. The profile uniquely identifies Mr. Kis. A screenshot depicting the profile is shown below. For privacy, Plaintiff's counsel redacted Mr. Kis' email address and mobile phone number.

61.    Cognism provides a search page on which trial and paying users of cognism.com may search, and have searched, for Mr. Kis by name or by entering characteristics of what Cognism calls his "persona" – *e.g.*, location, seniority, job title, and industry. Anyone who creates a free trial account on cognism.com may access the page and search for Mr. Kis without paying for a subscription. Below is the result of a search performed using a free trial account. Mr. Kis' profile appears as one of the search results, as do the profiles of hundreds of absent Class members. For privacy, Plaintiff's counsel redacted names and contact information.



62.   Trial users who attempt to export Mr. Kis's and Class members' profile information to an Excel spreadsheet or to a CRM receive a pop-up message informing them that exports of more than 25 contacts are available only to users with "bulk credits," which are available only to paying subscribers.



63.     After the free trial period expires, users who attempt to log in to cognism.com to search view Plaintiff's and Class members' profiles are informed they must purchase a subscription.

64.     Cognism also advertises cognism.com subscriptions by offering to send "25 leads. . . for free" to prospective subscribers. Mr. Kis' and Class members' profiles are among those Cognism uses as part of its "25 leads . . . for free" advertising technique. Plaintiff is informed and believes that Cognism has sent Mr. Kis' profile in response to a request for 25 free leads.



65.     The price of a subscription to cognism.com varies depending on the package purchased and the number of subscribers. A typical subscription plan costs 21 thousand dollars per year for four users.

66.     Cognism advertises that users who purchase a paid subscription to cognism.com receive a variety of services, including:

a.    The ability to search, view, and export profiles about Mr. Kis and millions of Class members and other individuals;

b.   Access to "Intent data" about Mr. Kis' and Class members' "web content consumption," including which "articles and reviews" they have read, which "whitepapers" they have downloaded, what "websites" they have visited, how long they remained on each website, and whether they scrolled to the bottom of the website page;

c.   Access to company-level data about millions of companies, including companies' size, industry, recent funding rounds, technologies used, and whether they are hiring.

**Cognism uses Plaintiff's persona to advertise subscriptions to www.kaspr.io**

67.    Cognism also uses Mr. Kis' name, photograph, likeness, and persona in advertisements promoting paid subscriptions to kaspr.io, a website owned and operated by Cognism.

68.    Cognism advertises subscriptions to kaspr.io by offering a free web extension or "plug-in." The free extension comes with five free "credits," which the user may spend on actions such as revealing a Class members' mobile phone number or email address.

69.    The kaspr.io extension works in conjunction with the social networking site LinkedIn. B2B marketers and salespeople who download the extension may search and have searched for Mr. Kis on LinkedIn.

70.     When the user views Mr. Kis' LinkedIn profile, the Kaspr extension displays a pop-up on the right side of the screen. As shown below, the pop-up displays the Kaspr brand and logo directly above Mr. Kis' name and photograph. For privacy, Plaintiff's counsel redacted Mr. Kis' face and the faces and names of other individuals who appear on the page.

71.     The Kaspr pop-up advertisement prompts the user to perform an "Advanced Search," which "focuses on finding [Mr. Kis'] **Phone Numbers**." (Emphasis in original image displayed below.) The pop-up advertisement informs the user that performing an Advanced Search will expend two of the five free "credits" Cognism gave the user as a promotional free trial.



72.     After the user clicks to perform an Advanced Search, Kaspr reveals the email addresses and phone numbers of the person whose LinkedIn profile the user is viewing – in this case, Mr. Kis.

73.     Mr. Kis chose <u>not</u> to share his email and phone number on his LinkedIn profile. Nevertheless, to attract paying subscribers, Kaspr reveals his contact information to B2B salespeople and marketers without Mr. Kis' consent or knowledge.



74.     Kaspr also provides a homepage on which the user may save Mr. Kis and other Class members' as "leads" intended to be the subject of unsolicited promotions.



75.     After a trial user has expended the five free credits on searches for Plaintiff, Class members, and other individuals, Cognism informs the user they must purchase a subscription to kaspr.io.

76.     A subscription to kaspr.io costs between 30 and 45 Euros per month, depending on the plan purchased. A summary of the available subscription plans is shown below:



77.     As shown in the screenshot above, Cognism advertises that users who purchase a paid subscription to kaspr.io receive a variety of services, including:

a.  The ability to reveal contact information, including phone numbers and emails, that Mr. Kis and millions of Class members chose not to share on their LinkedIn profiles;

b.  The ability to export contacts to an excel spreadsheet or CRM;

c.  Access to "Sales Automation" tools provided by Kaspr;

d.  "API Access" allowing the user to integrate Kaspr data into custom-built applications; and

e.  Team management tools.

**Cognism's use of Plaintiff's persona and collection of Plaintiff's information are illegal**

78.    Cognism's purpose in using Mr. Kis' name, personal information, photograph, and persona on cognism.com and on kaspr.io is to solicit the purchase of paid subscriptions.

79.    By allowing trial users to search for, download, and view Mr. Kis' profile including his name, photograph, job title, location, email, and mobile phone number for a limited time (cognism.com) or as part of a limited number of searches (kaspr.io), Cognism trades on the commercial value of Mr. Kis' name and personal information. Plaintiff's and Class members' profiles are valuable to B2B marketers and salespeople because, as described on Cognism's website and YouTube videos, marketers and salespeople can use the contact information and personal details in the profiles to craft personalized promotional messages directed at Plaintiff and the Class. Salespeople and marketers are willing to pay for Cognism's subscription services because, after viewing and using Plaintiff's and Class members' profiles through Cognism's promotional free trials, they understand the value of the profiles to their sales and marketing efforts.

80.    Cognism's website states that its primary source for the contact, job title, and other information in Class members' profiles is "community-sourced data." Cognism collects this data via software that automatically intercepts, captures, stores, and reads the content of emails sent and received by its subscribers. The software extracts contact, job title, and other information from email signature blocks.

81.    Based on Cognism's description of "community-sourced data" as the primary source from which Cognism obtains individuals' information, Plaintiff believes Cognism obtained some or all of the information in its possession by intercepting, capturing, and reading the contents of an email or emails he sent or received.

82.    Cognism did not obtain permission from Mr. Kis or his employer prior to scraping his personal information and using Mr. Kis' persona, photograph, personal information, and LinkedIn profile to advertise paid subscriptions to products Mr. Kis does not use or endorse. On information and belief, Cognism did not obtain permission from any of the sources from which

it extracted Mr. Kis' personal information.

83.     Mr. Kis has intellectual property and privacy interests in his name, likeness, and persona recognized by California statutory and common law. He has the right to exclude anyone from making commercial use of his persona without his permission.

84.     Mr. Kis has privacy interests recognized by California statutory law in the confidentiality of communications he sends and receives. He has the right not to have his communications intercepted or eaves-dropped upon without his permission.

85.     Cognism has injured Mr. Kis by taking his intellectual property without compensation; by invading his privacy rights protected by statute and common law; and by unlawfully profiting from its exploitation of his personal information.

86.     Cognism's illegal actions caused Mr. Kis mental injury and disturbed his peace of mind. Mr. Kis is deeply uncomfortable in the knowledge that Cognism is using his name, photograph, and persona to advertise and as part of two commercial products he has no interest in supporting. He is also deeply uncomfortable in the knowledge that Cognism intercepted and read the contents of his email communications to obtain his personal information. He is also deeply uncomfortable in the knowledge that cognism.com offers a service that will track his searches and behaviors on the Internet without his knowledge or consent.

87.     Mr. Kis believes his persona and likeness are rightly his to control. Cognism's illegal use has left him worried and uncertain about his inability to control how his name and persona is used. Mr. Kis feels that Cognism's use of his name, persona, photograph, personal information, and browsing history is an alarming invasion of his privacy. Mr. Kis believes that Cognism's collection and publication of personal details about him encourages and enables identity fraud. He believes Cognism's use of his personal information encourages and enables harassing marketing and sales communications that he does not want.

## CLASS ACTION ALLEGATIONS

88.     Plaintiff brings this action both individually and as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) and seeks to represent the following Classes defined as:

**Cognism.com class:** All current and former California residents who are not subscribers of cognism.com and whose names and personal information Cognism incorporated in profiles used to promote paid subscriptions to cognism.com.

**Kaspr.io class:** All current and former California residents who are not subscribers of kaspr.io, who have profiles on the professional networking site LinkedIn, and whose names and personal information Kaspr used to promote paid subscriptions to kaspr.io.

89.     Excluded from the proposed Classes are Plaintiff's counsel; Cognism, its officers and directors, counsel, successors, and assigns; any entity in which Cognism has a controlling interest; and the judge to whom this case is assigned and the judge's immediate family.

90.     The members of the proposed Classes are so numerous that joinder of individual claims is impracticable. Cognism.com has profiles on millions of Californians, and millions of Californians have profiles on LinkedIn, which profiles Cognism uses to promote kaspr.io subscriptions.

91.     There are significant questions of fact and law common to the members of the Class. These include:

    a.   Whether Cognism's misappropriation of names, photographs, and personal information, and use of that information in the advertising techniques described in this Complaint, constitutes the knowing use without consent of another's name, photograph, or likeness on or in products or for purposes of advertising products within the meaning of Cal. Civ. Code § 3344;

    b.   Whether Cognism solicited and obtained written consent from Plaintiff and the Class prior to using their personas in advertisements promoting its websites, as required by Cal. Civ. Code § 3344;

    c.   Whether Cognism's use of Plaintiff's and Class members' names and personal information in advertisements and as part of their subscription products falls within the exceptions for "use in connection with any news, public affairs, or sports broadcast or account, or any political campaign" within the meaning of

Cal. Civ. Code § 3344;

d.  The amount of Cognism's "profits from the unauthorized use" of Plaintiff's and Class members' names and personal information;

e.  Whether Cognism's conduct described in this Complaint violates California common law prohibiting misappropriation of a name or likeness;

f.  Whether Cognism's collection of Plaintiffs' and Class members' personal information via "community-sourced data," by which Cognism intercepts and reads email communications without permission from Plaintiff and the Class, violates the California Information Privacy Act, Cal. Pen. Code §§ 630 *et seq.*;

g.  Whether Plaintiff and Class Members are entitled to the injunctive, declaratory, monetary, punitive, and other relief requested in this Complaint.

92.  Plaintiff's claims are typical of those of the proposed Classes. Plaintiff and all members of the proposed Classes have been harmed by Cognism's misappropriation and misuse of their identifies, names, likenesses, personas, and other personal information in advertisements promoting subscriptions to cognism.com and kaspr.io. Cognism presents its advertisements in the same way for each Class member. Plaintiff and all members of the proposed Classes have been harmed by Cognism's surreptitious interception and misappropriation of the content of their email communications.

93.  Just as it did with Mr. Kis, Cognism appropriated the personal information and personas of all Class members without their permission. Cognism's sole purpose in appropriating Class members' information and personas was to solicit the purchase of paid subscriptions to cognism.com and to kaspr.io. Cognism has injured the Class members by taking their intellectual property without compensation; by invading their privacy rights protected by statute and common law; and by unlawfully profiting from its exploitation of their personal information.

94.  The proposed class representative will fairly and adequately represent the proposed Classes. The class representative's claims are co-extensive with those of the rest of the Classes. Plaintiff is represented by qualified counsel experienced in class action litigation of this

nature.

95.     A class action is superior to other available methods for the fair and efficient adjudication of these claims because individual joinder of the claims of all members of the proposed Class is impracticable. Many members of the Classes do not have the financial resources necessary to pursue this claim, and even if they did, the size of their interest in the case may not be large enough to merit the cost of pursuing the case. Individual litigation of these claims would be unduly burdensome on the courts in which individualized cases would proceed. Individual litigation would greatly increase the time and expense needed to resolve a dispute concerning Cognism's common actions towards an entire group. Class action procedures allow for the benefits of unitary adjudication, economy of scale, and comprehensive supervision of the controversy by a single court.

96.     The proposed class action may be certified pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure. Cognism has acted on grounds generally applicable to the proposed Classes, such that final injunctive and declaratory relief is appropriate with respect to the Classes as a whole.

97.     The proposed class action may be certified pursuant to Rule 23(b)(3). Questions of law and fact common to Class members predominate over questions affecting individual members, and a class action is superior to other available methods for fairly and efficiency adjudicating the controversy.

**FIRST CAUSE OF ACTION**

**Violation of California Right of Publicity Statute, Cal. Civ. Code § 3344**

98.     Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this Complaint.

99.     California's right of publicity statute prohibits the "knowing[] use[] of another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent." Cal. Civ. Code § 3344.

100.    By engaging in the foregoing acts and omissions, Cognism used Plaintiff's and Class members' names, likenesses, photographs, and personas for commercial purposes without consent. Plaintiff's and Class members' names and personas have commercial value as demonstrated by Cognism's use and similar use by Cognism's competitors.

101.    Each use of a Class members' name and personal information is a separate and distinct violation of Cal. Civ. Code § 3344.

102.    Cal. Civ. Code § 3344 provides that a person who violates the statute is liable "in an amount equal to the greater of seven hundred fifty dollars ($750) or the actual damages," in addition to "any profits from the unauthorized use." The statute also provides for "[p]unitive damages" and "attorney's fees and costs."

103.    As a result of Cognism's violation of Cal. Civ. Code § 3344, Plaintiff and the Classes have suffered injury to their privacy rights and actual damages both economic and emotional. Plaintiff and Class members have been denied the economic value of their names, likenesses, and personas, which Cognism misappropriated without compensation to Plaintiff and the Class. Plaintiff and the Class members were denied their statutorily protected right to refuse consent and protect their privacy and the economic value of their names, likenesses, and personas. Plaintiff and the Class members suffered emotional disturbance from the misappropriation and misuse of their names and personal information. Plaintiff and Class members were denied their statutorily protected right to refuse consent to a third party intercepting their communications without consent.

104.    Plaintiff on behalf of the Classes seek: actual damages, including Cognism's profits from its misuse; statutory damages; compensatory damages for the royalties Cosgnism failed to pay; punitive damages; nominal damages; the award of attorneys' fees and costs; the entry of an injunction prohibiting Cognism's illegal conduct; and declaratory relief.

**SECOND CAUSE OF ACTION**

**Violation of California Invasion of Privacy Act, Cal. Pen. Code §§ 630 *et seq.***

105.    Plaintiff incorporates by reference the allegations contained in all preceding

paragraphs of this Complaint.

106.    The California Invasion of Privacy Act ("CIPA") is codified at Cal. Penal Code §§ 630 to 638. The Act begins with its statement of purpose:

> The Legislature hereby declares that advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society. Cal. Penal Code § 630.

107.    Cal. Pen. Code § 631 provides that "[a]ny person who, by means of any machine, instrument, or contrivance, or in any other manner . . . willfully and without consent of all parties to the communication . . . reads, or attempts to read, or to learns the contents . . . of any message . . . or communication while the same . . . is being sent from, or received at any place within this state" is liable under the statute.

108.    Cal. Pen. Code § 632 provides that "[a] person who . . . without consent of all parties to a confidential communication . . . uses an electronic . . . . recording device to eavesdrop upon or record the confidential communication" is liable under the statute.

109.    Cal. Pen. Code § 637 provides that "[e]very person not a party to a telegraphic or telephonic communication who willfully discloses the contents of a telegraphic or telephonic message . . . addressed to another person, without the permission of that person" is liable under the statute.

110.    Cognism violated §§ 631, 632, and 637 by collecting "community-sourced data" about Plaintiff and the Class members. As alleged above, Cognism installs software on subscribers' computers that automatically intercepts, copies, captures, and stores the contents of emails sent to and received by subscribers. Cognism reads the contents of these emails without first obtaining permission from all parties to the communication. Cognism extracts and copies personal information contained in the body of the emails, including email signature blocks.

Cognism willfully discloses the contents of email signature blocks by incorporating that content in its profiles about individuals.

111.    The emails sent and received by Plaintiff and Class members, which Cognism read without their permission, constitute "confidential communications" within the meaning of § 632 because Plaintiff and Class members had an objectively reasonable expectation of privacy in those emails.

112.    At all relevant times, Cognism's tracking and interceptions of the Plaintiff's and the Class members' confidential communications was without authorization and consent. Plaintiff and the Class members never viewed any policies disclosing that their confidential communications could be shared with Cognism, nor that certain data would be collected from their confidential communications and shared with Cognism.

113.    The following items constitute "machine[s], instrument[s], or contrivance[s]" under the CIPA, and even if they do not, Cognism's deliberate and purposeful scheme to read and extract content from confidential emails falls under the broad statutory category of "any other manner":

> a. The computer codes and programs Cognism uses to intercept, capture, copy, and extract email signatures from Plaintiff's and Class members' emails;
>
> b. Kaspr and Cognism subscribers' browsers and mobile applications, upon which Cognism installs the software that extracts "community-sourced information" from emails;
>
> c. Kaspr and Cognism subscribers' computing and mobile devices; and
>
> d. The servers on which Cognism hosts the kaspr.io and cognism.com websites.

114.    Cal. Pen. Code § 637.2 provides that a plaintiff may bring a private action against a person who violates the statute and may recover "[f]ive thousand dollars . . . per violation." The statute states that "[i]t is not a necessary prerequisite . . . that the plaintiff has suffered, or be threatened with, actual damages."

115.    As a result of Cognism's unlawful and surreptitious interception of,

eavesdropping upon, and dissemination of the contents of their confidential emails, without their consent, Plaintiff and the Classes have suffered an invasion of their statutorily protected right to control access to their confidential communications.

116.    Plaintiff, on behalf of the Classes, seeks statutory damages in the amount of $5,000 for each email Cognism intercepted, eavesdropped upon, read the contents of, and/or disclosed the contents of.  Plaintiff, on behalf of the Classes, also seeks punitive damages; nominal damages; the award of attorneys' fees and costs; the entry of an injunction prohibiting Cognism's illegal conduct; and declaratory relief.

## THIRD CAUSE OF ACTION

## Tort of Appropriation of a Name or Likeness

117.    Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this Complaint.

118.    California common law recognizes the tort of "appropriation, for the defendant's advantage, of the plaintiff's name or likeness." *Eastwood v. Superior Court*, 149 Cal.App.3d 409, 416 (Cal. Ct. App. 1983).

119.    By engaging in the forgoing acts and omissions, Cognism (1) used the personas and likenesses of Plaintiff and the Classes in advertisements for subscriptions and as part of its subscription products; (2) appropriated Plaintiff's and Class members' names and likenesses to Cognism's commercial advantage; (3) failed to obtain Plaintiff's and Class members' consent; and (4) injured Plaintiff's and Class Members' by causing harm both economic and emotional. *See Eastwood,* at 417.

120.    Plaintiff on behalf of the Classes seeks monetary recovery in the amount of the commercial advantage Cognism derived from its misuse, compensatory damages for Cognism's failure to pay royalties owed, and the entry of an injunction prohibiting Cognism's tortious acts.

## FOURTH CAUSE OF ACTION

## California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*

121.    Plaintiff incorporates by reference the allegations contained in all preceding

paragraphs of this complaint.

122.   Cognism has and is engaged in unfair competition, as that term is defined in the California Unfair Competition Law, Cal. Bus. & Prof. Code. § 17200 et seq. ("UCL").

123.   As described in this complaint, Cognism's misappropriation and use without consent of Plaintiff's and Class Members' names, photographs, likenesses, and personal information is a violation of California's Right of Publicity statute, Cal. Civ. Code § 3344, California common law prohibiting misappropriation of a name or likeness, and Cal. Pen. Code § 630 *et seq.*

124.   By engaging in the conduct described in this complaint and violating California law, Cognism engaged in and continues to engage in "unlawful" business acts and practices prohibited by the UCL.

125.   By engaging in the conduct described in this complaint, including profiting from the sale and use in advertising of personal information it misappropriated without consent, Cognism engaged in and continues to engage in "unfair" business acts and practices prohibited by the UCL.

126.   As a result of Cognism's actions, Plaintiff and Class members have been injured. Plaintiff and Class members lost the economic value of their names, personas, and likenesses, and are entitled to restitution, declaratory relief and an injunction. Plaintiff and Class members were denied their rights to refuse consent and protect their privacy.

## PRAYER FOR RELIEF

127.   WHEREFORE Plaintiff, individually and on behalf of the Classes, requests the following relief:

(a) For an order certifying the proposed Classes and appointing Plaintiff and his counsel to represent the Class;

(b) For a declaration that Cognism's acts and omissions constitute a knowing misappropriation of names, likeness, photographs, and other personal information, and infringe on privacy and intellectual property rights, in violation of California

law;

(c) For a declaration that Cognism's interception, eavesdropping upon, and disclosure of the contents of private email communications violates California law;

(d) For nominal damages awarded in recognition of Cognism's violation of the statutorily protected property and privacy rights of Plaintiff and the Classes;

(e) For preliminary and permanent injunctive relief enjoining and preventing Cognism from continuing to operate its website without appropriate safeguards to ensure people's personal information is not collected and used illegally without their consent;

(f) For restitution for Plaintiff and members the Classes for the value that Defendants derived from misappropriating their names, likenesses, photographs, and personas;

(g) For an award of damages, including without limitation damages for actual harm, profits earned by Cognism in using misappropriated names and identities to sell subscriptions, reasonable royalties for the infringement of Plaintiff and Class members' intellectual property rights; and statutory damages;

(h) For an award of reasonable attorneys' fees and costs incurred by Plaintiff and the Class members; and

(i) Orders granting such other and further relief as the Court deems necessary, just, and proper.

### JURY TRIAL DEMAND

Plaintiff hereby demands a jury trial for all individual and Class claims so triable.

Respectfully submitted,

Dated: September 19, 2022                By:  _____*/s/ Michael F. Ram*_____

Michael F. Ram

Michael F. Ram (SBN 104805)
mram@forthepeople.com
Marie N. Appel (SBN 187483)
mappel@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Telephone: (415) 358-6293

Benjamin R. Osborn (to be admitted *Pro Hac Vice*)
102 Bergen St.
Brooklyn, NY 11201
Telephone: (347) 645-0464
Email: ben@benosbornlaw.com

Sam Strauss (to be admitted *Pro Hac Vice*)
sam@turkestrauss.com
Raina Borrelli (to be admitted *Pro Hac Vice*)
raina@turkestrauss.com
TURKE & STRAUSS LLP
613 Williamson St., Suite 201
Madison, Wisconsin 53703-3515
Telephone: (608) 237-1775
Facsimile: (509) 4423

*Attorneys for Plaintiff
and the Proposed Class*