1   Colleen Bal, State Bar No. 167637
WILSON SONSINI GOODRICH & ROSATI
2   Professional Corporation
One Market Plaza Spear Tower, Suite 3300
3   San Francisco, CA 94105
Telephone: (415) 947-2000
4   Facsimile:  (415) 947-2099
Email:      cbal@wsgr.com
5

6   Michael S. Sommer (admitted *pro hac vice*)
JaeYoung Ariel Jeong (admitted *pro hac vice*)
Derek K. Mong (admitted *pro hac vice*)
7   WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
8   1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022
9   Telephone: (212) 999-5800
Facsimile:  (212) 999-5899
10   Email:      msommer@wsgr.com
            ajeong@wsgr.com
11             dmong@wsgr.com

12   *Attorneys for Defendant Cognism Inc.*

13          **UNITED STATES DISTRICT COURT**
      **NORTHERN DISTRICT OF CALIFORNIA**
14

| | |
|---|---|
| 15   NICHOLAS KIS, on behalf of himself and all others similarly situated, | CASE NO.: 4:22-cv-05322-JST |
| 16 | **DEFENDANT'S MOTION TO DISMISS** |
| 17               Plaintiff, | **PURSUANT TO FRCP 12** |
| 18     v. | **Date:** Thursday, March 2, 2023 |
|   | **Time:** 2:00 PM Pacific Time |
| 19   COGNISM INC., | **Courtroom:** Oakland Courthouse, Courtroom 6 – 2nd Floor |
| 20               Defendant. | |
| 21 | Judge Jon S. Tigar |

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................................1

STATEMENT OF REQUESTED RELIEF .........................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................1

STATEMENT OF ISSUES TO BE DECIDED..................................................................4

STATEMENT OF FACTS ..................................................................................................4

LEGAL STANDARD .........................................................................................................7

ARGUMENT ......................................................................................................................8

I.     PLAINTIFF LACKS ARTICLE III STANDING BECAUSE HE HAS NOT SUFFERED A LEGALLY COGNIZABLE INJURY-IN-FACT, NOR IS ANY PURPORTED "INJURY" FAIRLY TRACEABLE TO COGNISM. ..........8

     A.     Plaintiff Has Not Alleged Adequate Facts To Support *Any* Theory of Injury. ......................................................................................9

     B.     The Conduct Allegedly Giving Rise to Plaintiff's Injuries Never Occurred. ...................................................................................10

     C.     The Use of a Person's Identity Is Not Theft of Intellectual Property........11

     D.     A Mere Statutory Violation Is Insufficient to Establish Injury-In-Fact. .........................................................................................11

     E.     The Allegation That Defendant Profited From Use of a Person's Identity Does Not Mean That Plaintiff Suffered An Injury-In-Fact. ........12

     F.     "Harm To Peace of Mind" Is Not a Legally Cognizable Injury-In-Fact. .........................................................................................13

     G.     The Possible Risk of Identity Theft or Fraud Is Too Speculative To Constitute An Injury-In-Fact. ...........................................................14

     H.     Even If Plaintiff Were Able To Articulate An Injury, That Injury Is Not Fairly Traceable to Cognism, But To Plaintiff's Attorney.................14

II.    PLAINTIFF DOES NOT ADEQUATELY ALLEGE A STATUTORY RIGHT-OF-PUBLICITY CLAIM OR A COMMON LAW MISAPPROPRIATION CLAIM. .................................................................15

     A.     Cognism Has Not Used Or Appropriated Plaintiff's Identity In A Manner That Gives Rise To Either His Publicity Claim or His Common Law Claim. ..............................................................................16

     B.     Plaintiff Has Not Adequately Alleged That He Has Suffered Any Injury. ......................................................................................20

III.   PLAINTIFF DOES NOT ADEQUATELY ALLEGE A VIOLATION OF SECTIONS 631, 632 AND 637 OF THE CALIFORNIA INVASION OF PRIVACY ACT ("CIPA"). ...................................................................20

    A.   Section 631 ...............................................................................20

    B.   Section 632 ...............................................................................23

    C.   Section 637 ...............................................................................24

IV.   PLAINTIFF DOES NOT ADEQUATELY ALLEGE A VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW ("UCL").........................25

CONCLUSION .........................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abdul-Jabbar v. Gen. Motors Corp.,*
  85 F.3d 407 (9th Cir. 1996) ................................................................ 15

*Ades v. Omni Hotels Mgmt. Corp.,*
  46 F. Supp. 3d 999 (C.D. Cal. 2014) ................................................. 23

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ............................................................................ 8

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007) ............................................................................ 8

*Boshears v. PeopleConnect, Inc.,*
  No. C21-1222 MJP,
  2022 WL 888300 (W.D. Wash. Mar. 25, 2022),
  *appeal filed*, No. 22-35262 (9th Cir. Mar. 28, 2022) ....................... 18

*Bradley v. Google, Inc.,*
  No. C 06-05289 WHA,
  2006 WL 3798134 (N.D. Cal. Dec. 22, 2006) ................................... 22

*Brooks v. Thomson Reuters Corp.,*
  No. 21-CV-01418-EMC,
  2021 WL 3621837 (N.D. Cal. Aug. 16, 2021) ............................. 17, 19

*Butt v. FD Holdings, LLC,*
  799 F. App'x 350 (6th Cir. 2020) ...................................................... 15

*Callahan v. Ancestry.com Inc.,*
  No. 20-CV-08437-LB,
  2021 WL 2433893 (N.D. Cal. June 15, 2021) ....................... 11, 12, 13

*Callahan v. Ancestry.com Inc.,*
  No. 20-CV-08437-LB,
  2021 WL 783524 (N.D. Cal. Mar. 1, 2021) ............................... 11, 13

*Callahan v. PeopleConnect, Inc.,*
  No. 20-CV-09203-EMC,
  2021 WL 5050079 (N.D. Cal. Nov. 1, 2021),
  *motion to certify appeal denied,*
  2022 WL 2132912 (N.D. Cal. June 14, 2022) ................................... 17

*Camacho v. Control Grp. Media Co., LLC,*
  No. 21-CV-1954-MMA (MDD),
  2022 WL 3093306 (S.D. Cal. July 18, 2022),
  *appeal filed*, No. 22-55735 (9th Cir. Aug. 3, 2022) ............... 17, 18, 19

*Campbell v. Facebook Inc.,*
  77 F. Supp. 3d 836 (N.D. Cal. 2014) ........................................... 24, 25

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013) ........................................................................................... 14

*Cohen v. Facebook, Inc.,*
    798 F. Supp. 2d 1090 (N.D. Cal. 2011) ..................................................... 20, 25

*Cross v. Facebook, Inc.,*
    14 Cal. App. 5th 190 (2017) .............................................................................. 20

*Diamond v. Google, Inc.,*
    No. CIV-1202715, slip op. (Cal. Super. Ct., Marin Cnty. Nov. 9, 2012) ................. 23, 24

*Doak v. Cap. One, N.A.,*
    No. 5:18-CV-07102-EJD,
    2019 WL 4645162 (N.D. Cal. Sept. 24, 2019) ................................................. 14

*Dobrowolski v. Intelius, Inc.,*
    No. 17 CV 1406,
    2018 WL 11185289 (N.D. Ill. May 21, 2018) ................................................. 19

*Foster v. Essex Prop., Inc.,*
    No. 5:14-CV-05531-EJD,
    2017 WL 264390 (N.D. Cal. Jan. 20, 2017) ................................................... 10

*Gearhart v. Express Scripts, Inc.,*
    422 F. Supp. 3d 1217 (E.D. Ky. 2019) ............................................................. 15

*Holley v. Gilead Scis., Inc.,*
    410 F. Supp. 3d 1096 (N.D. Cal. 2019) .............................................................. 7

*In re Facebook, Inc., Consumer Priv. User Profile Litig.,*
    402 F. Supp. 3d 767 (N.D. Cal. 2019) ......................................................... 13, 14

*In re Google Assistant Priv. Litig.,*
    457 F. Supp. 3d 797 (N.D. Cal. 2020) ............................................................. 23

*In re Google Inc.,*
    No. 13-MD-02430-LHK,
    2013 WL 5423918 (N.D. Cal. Sept. 26, 2013),
    *motion to certify appeal denied,*
    2014 WL 294441 (N.D. Cal. Jan. 27, 2014) ....................................... 21, 23, 24

*In re iPhone Application Litig.,*
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) ..................................................... 22, 25

*In re iPhone Application Litig.,*
    No. 11-MD-02250-LHK,
    2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ............................................ 10, 25

*In re Vizio, Inc., Consumer Priv. Litig.,*
    238 F. Supp. 3d 1204 (C.D. Cal. 2017) ............................................................ 21

*In re Zynga Priv. Litig.,*
    750 F.3d 1098 (9th Cir. 2014) ......................................................................... 22

*Kellman v. Spokeo, Inc.*,
  No. 3:21-CV-08976-WHO,
  2022 WL 1157500 (N.D. Cal. Apr. 19, 2022),
  *motion to certify appeal denied*,
  2022 WL 2965399 (N.D. Cal. July 8, 2022) ...................................................... 18

*LaCourt v. Specific Media, Inc.*,
  No. SACV 10-1256 GW JCGX,
  2011 WL 1661532 (C.D. Cal. Apr. 28, 2011) ...................................................... 10

*Low v. LinkedIn Corp.*,
  No. 11-CV-01468-LHK,
  2011 WL 5509848 (N.D. Cal. Nov. 11, 2011) ....................................... 9, 12, 14

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ..................................................................................... 8, 14

*Martinez v. ZoomInfo Techs. Inc.*,
  No. C21-5725 MJP,
  2022 WL 1078630 (W.D. Wash. Apr. 11, 2022),
  *appeal filed*, No. 22-35305 (9th Cir. Apr. 15, 2022) .......................................... 18

*Navarro v. Block*,
  250 F.3d 729 (9th Cir. 2001) ........................................................................... 8

*Opperman v. Path, Inc.*,
  87 F. Supp. 3d 1018 (N.D. Cal. 2014) ..................................... 7, 8, 21, 25

*Safe Air for Everyone v. Meyer*,
  373 F.3d 1035 (9th Cir. 2004) ..................................................................... 2, 7

*Siegel v. ZoomInfo Techs., LLC*,
  No. 21 C 2032,
  2021 WL 4306148 (N.D. Ill. Sept. 22, 2021) .................................................... 18

*Spokeo, Inc. v. Robins*,
  578 U.S. 330, *as revised* (May 24, 2016) ............................................... 11, 12

*Starr v. Baca*,
  652 F.3d 1202 (9th Cir. 2011) ......................................................................... 8

*Svenson v. Google Inc.*,
  65 F. Supp. 3d 717 (N.D. Cal. 2014) ........................................................... 23

*Thompson v. Getty Images (US), Inc.*,
  No. 13 C 1063,
  2013 WL 3321612 (N.D. Ill. July 1, 2013) ...................................................... 19

*U.S. News & World Rep., Inc. v. Avrahami*,
  Nos. 95-1318 (Law), 96-203 (Chancery),
  1996 WL 1065557 (Va. Cir. Ct. June 13, 1996) .............................................. 19

*Verde v. Confi-Chek, Inc.*,
  No. 21 C 50092,
  2021 WL 4264674 (N.D. Ill. Sept. 20, 2021) .................................................... 14

*Wheaton v. Apple Inc.*,
　　No. C 19-02883 WHA,
　　2019 WL 5536214 (N.D. Cal. Oct. 25, 2019) ................................................................... 9

## STATUTES

Cal. Bus. & Prof. Code § 17200 ............................................................................................... 1, 4

Cal. Civ. Code § 3344 ............................................................................................... 1, 4, 15, 17

Cal. Civ. Code § 3344(a) ............................................................................................................ 15

Cal. Penal Code § 630 ......................................................................................................... 1, 4, 20

Cal. Penal Code § 631 ....................................................................................... 3, 4, 20, 21, 22, 25

Cal. Penal Code § 632 ............................................................................................... 3, 4, 20, 23, 24

Cal. Penal Code § 637 ............................................................................................... 3, 4, 20, 24

## RULES

Fed. R. Civ. P. 12(b)(1) ............................................................................................................... 7

Fed. R. Civ. P. 12(b)(6) ............................................................................................................... 8

Fed. R. Civ. P. 12(h)(3) ............................................................................................................... 7

## OTHER AUTHORITIES

J. Thomas McCarthy & Roger E. Schechter,
　　1 Rights of Publicity and Privacy § 5:19 (2d ed. May 2022 Update) ......................... 17

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on March 2, 2023, at 2:00 PM Pacific Time, Defendant Cognism Inc. ("Cognism") will move the Court for an order granting its motion to dismiss Plaintiff's Complaint (ECF No. 1).

## STATEMENT OF REQUESTED RELIEF

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, Cognism requests that the Court grant its motion to dismiss the Complaint with prejudice.

## MEMORANDUM OF POINTS AND AUTHORITIES

This is a case where the sole use of Plaintiff's name or information was occasioned by Plaintiff's own attorney. He misrepresented himself to Cognism in order to gain access to Cognism's platform of business-to-business contacts, and then used that platform to search for and download information about Plaintiff when no other Cognism customer ever had, and where Plaintiff's name and information were never used by Cognism at all in promoting its products.

Based on Plaintiff's attorney's own conduct, Plaintiff has now sued Cognism, advancing four claims: (i) a violation of the California Right of Publicity Law ("CRPL"), Cal. Civ. Code § 3344 (the "Publicity Claim"); (ii) a violation of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 630 *et seq* (the "Privacy Claim"); (iii) a violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq* (the "Unfair Competition Claim"); and (iv) a common law claim for misappropriation of name or likeness (the "Common Law Claim"). As discussed fully below, Plaintiff's effort to fabricate causes of action against Cognism must fail as all four causes of action should be dismissed.

***First***, all four of Plaintiff's causes of action should be dismissed because Plaintiff lacks standing—that is, he has not suffered any legally cognizable injury-in-fact. He does not adequately allege that he has suffered the loss of any money or property (because he has not), and his effort to establish standing on the basis of a claimed statutory violation or conclusory allegations of "harm to peace of mind" also fail because those are not legally cognizable injuries. Plaintiff lacks standing with respect to his Publicity Claim and Common Law Claim for the additional reason that the factual underpinning of both of these claims—that Cognism uses

Plaintiff's name and information to advertise its products—is plainly false.  Plaintiff alleges that "Cognism displays a profile of personal information about Mr. Kis on www.cognism.com" to promote its products.  Compl. ¶¶ 8, 58-60.  But this allegation is simply untrue and is surely known by Plaintiff's counsel to be untrue:  Mr. Kis' name and information have **never** appeared on Cognism's public-facing website.  Decl.[1] ¶ 25.[2]  Plaintiff lacks standing with respect to his Privacy Claim, because the factual underpinning of that claim—that Cognism obtained information about Mr. Kis by intercepting and reading emails sent by and received from Cognism subscribers—is also false:  Cognism **never** collected any information relating to Mr. Kis from subscriber emails.  Decl. ¶ 17.

  ***Second***, even if Plaintiff had standing—and he does not—all of Plaintiff's claims fail as a matter of law.  *Plaintiff's Publicity Claim and Common Law Claim* must each be dismissed because there has been no use or appropriation of Plaintiff's identity to advertise Cognism's platform.  Unlike other companies against whom such claims have been sustained, Cognism does not use "teaser profiles" bearing a specific person's name to advertise paid subscriptions to its products.  There is no "landing page" about any individual that would appear in search engine search results that could constitute an advertisement.  There is no "view more" or "subscribe now" button or link on the Cognism platform that could constitute a solicitation.  Instead, unlike the archetypal right-of-publicity claim—where a celebrity's identity is used to promote a separate product without his or her consent—the only time Plaintiff's name or information could possibly appear is when a subscriber is actually using Cognism's platform.  As such, there is no use or appropriation of Mr. Kis' identity separate from the Cognism product itself, which is insufficient as a matter of law to sustain these claims.  Moreover, even if accessing Mr. Kis' information were to be considered a use or appropriation of his identity, the fact that the only person to have ever viewed Plaintiff's information on Cognism's platform is Plaintiffs' own

---

[1] All references to "Decl." are to the contemporaneously filed declaration of James Isilay.

[2] "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint . . . ."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

attorney necessarily means that Plaintiff has not suffered the type of resulting "injury" he alleges.

Accordingly, the Publicity Claim and Common Law Claim must each be dismissed.

*Plaintiff's Privacy Claim* must also be dismissed.  Although pled as a single cause of

action, Plaintiff asserts violations of three different sections of CIPA: Section 631 for

wiretapping, Section 632 for eavesdropping on or recording confidential communications, and

Section 637 for the disclosure of telegraphic or telephonic messages.  All fail.  The Section 631

claim fails because Plaintiff has not alleged sufficient facts to suggest that Cognism intercepted

the "contents" of any communication "in transit."  To state a claim under Section 631, there must

be an interception of the substantive content of a communication contemporaneous with the

transmission.  Here, Plaintiff has not alleged any facts to suggest that any specific email sent to

or received from Plaintiff was intercepted in transit—that is, simultaneous with transmission and

prior to receipt.[3]  Moreover, the content of the information alleged to have been collected by

Cognism (*i.e.*, email signatures) does not constitute the substantive "content" of any

communication that could give rise to a CIPA claim.  The Section 632 claim fails because

Plaintiff has not alleged any electronic recording or eavesdropping, and Plaintiff's email

communications are not "confidential communication[s]" in any event, as required by Section

632.  This is because email communications can lawfully be forwarded or shared without the

sender's consent or knowledge.  The Section 637 claim fails because Plaintiff has not alleged

that the substantive "contents" of any "telegraphic or telephonic message" was disclosed.  These

deficiencies are fatal to his CIPA claim.

*Plaintiff's Unfair Competition Claim* also fails as a matter of law.  California law makes

clear that, in order to sustain such a claim, a plaintiff must have suffered a loss of money or

property.  Here, Plaintiff's allegations are insufficient as a matter of law to establish either.

Accordingly, the Unfair Competition Claim must be dismissed.

---

[3] Nor could Plaintiff truthfully make such an allegation, as Cognism does not intercept email communications from its subscribers.  To the contrary, the subscribers from whom signature block information is captured expressly consent to have that information accessed by Cognism, and the process by which the information is obtained all occurs well after the fact of the email transmission.  Decl. ¶¶ 8-14.

**STATEMENT OF ISSUES TO BE DECIDED**

1.       Whether Plaintiff has satisfied his burden of alleging a legally cognizable injury-in-fact that is fairly traceable to Cognism's conduct for purposes of Article III standing.

2.       Whether Plaintiff has adequately alleged a violation of the California Right of Publicity Law ("CRPL"), Cal. Civ. Code § 3344, or a California misappropriation claim.

3.       Whether Plaintiff has adequately alleged a violation of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 630 *et seq*, Sections 631, 632 and 637.

4.       Whether Plaintiff has adequately alleged a violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq*.

**STATEMENT OF FACTS**

Cognism is a sales lead generation platform that helps companies connect with potential customers.  Compl. ¶¶ 4, 6-7, 66.  To facilitate such connections, Cognism collects information about business professionals, such as their employer, job title, office location, and contact information.  Compl. ¶ 6.  The first layer of data Cognism collects is from third-party data brokers, such as Pipl and CoreSignal, who sell "base" information (*e.g.*, name, title) about business professionals to Cognism, often collected from a variety of public sources (*e.g.*, website directories).  Decl. ¶ 4.  The vast majority of information on Cognism's platform is collected through this process, which is a standard industry practice.  Decl. ¶ 5.  Cognism then confirms the integrity of the information, for example, by monitoring publicly available information from corporate websites and calling a listed phone number to confirm the identity of the recipient.  Compl. ¶ 23; Decl. ¶ 6.  Cognism also performs other checks to ensure the integrity of the data, including verifying that only business contact information (rather than personal contact information) is being collected and flagging any individuals who are on any government-run "Do Not Call" registries.  Compl. ¶ 61 (showing "DNC" or do-not-call marker); Decl. ¶ 7.

For a brief period of time in the summer of 2022, Cognism experimented with additional data collection through the Cognism "Signatures" product, whereby Cognism offered certain customers access to an email signature standardization tool in exchange for access to the customer's stored email communications.  Compl. ¶¶ 19-20, 80; Decl. ¶ 8.  The Signatures

product allowed Cognism to capture, with the customer's consent, the email signature blocks of individuals with whom the customer's employees were communicating and then added any new contact information (*e.g.*, company name, company address, or business telephone) to an existing "base" profile.  Compl. ¶¶ 20, 80;  Decl. ¶ 9.  The substantive contents of the email messages themselves were not collected, and no new profiles were generated as a result of this process; rather, existing profiles were simply supplemented.  Decl. ¶ 11.  ***None of the information contained in Cognism's platform relating to Mr. Kis was collected from the Cognism Signatures product.***  Decl. ¶¶ 15-17.

Cognism's aggregated database of verified information about business professionals is available through Cognism's platform, which allows an individual to search by various criteria to identify potential sales leads.  *See* Compl. ¶¶ 4, 6, 61, 66.  As an example, the platform allows for an e-discovery vendor to search for lawyers in a given geography with a certain title, such as "discovery attorney," and allows the user to download a list of potential sales targets.  There is no "limited access" or "limited use" version of the platform; when a user gets access to Cognism's platform, they have access to the entire platform and all of its information. Compl. ¶ 61; Decl. ¶ 20.

The Cognism platform has no teaser profiles or landing pages.  Decl. ¶ 21.  In other words, there is no standalone webpage containing an individual's identity with a solicitation to buy anything—not a subscription to Cognism's platform, not any particular individual's contact information, or otherwise.  Decl. ¶ 22  Consistent with this practice, Cognism also does not engage in search engine optimization ("SEO") or indexing practices such that an individual's information on Cognism would appear in a search engine search result.  Decl. ¶ 23. Furthermore, the individuals whose names and likenesses appear on Cognism's public-facing website are company employees who consented to use of their identities for marketing purposes, or are fictitious persons created for the website.  Decl. ¶ 24.

Cognism allows potential customers the opportunity to try its platform for free. Compl. ¶ 9.  Such potential customers first interface with a Cognism sales representative to receive a demonstration of the platform and to receive temporary log-in credentials.

1   Compl. ¶ 13.  The temporary log-in credentials permit the trial user to use the full platform for a

2   limited period of time or for a limited number of contact information downloads.  Compl. ¶ 10.

3       One additional way that information in the Cognism platform can be accessed is through

4   the Kaspr plug-in.  *See* Compl. ¶¶ 24, 68.  Kaspr is a plug-in or extension to an internet browser

5   that allows an individual searching on the LinkedIn platform to view more information about that

6   individual.  *Id.*  To use Kaspr, an individual must first register with Kaspr online and download

7   the browser plug-in.  Compl. ¶ 25.  Once the user signs up and downloads the plug-in, the next

8   time the user visits a LinkedIn profile, he or she can click on the in-browser Kaspr icon to reveal

9   whether any additional information is available for purchase.  Compl. ¶¶ 26-27, 71.

10   Accordingly, as with the Cognism platform, Kaspr does not have any specific "landing pages"

11   for specific individuals; everything is viewed from within the LinkedIn profile itself.

12   Compl. ¶ 69; Decl. ¶ 35.  Relatedly, Kaspr itself has no search functionality, and all searches for

13   individuals must be performed within LinkedIn itself—Kaspr is merely a layer on top of the

14   information that a LinkedIn profile provides.  Decl. ¶ 36.  If a user does not have a LinkedIn

15   profile, Kaspr will not work.  *See* Compl. ¶¶ 26, 69.

16       **Plaintiff Nicholas Kis**.  Information concerning Mr. Kis was obtained by Cognism from

17   third party data sellers Pipl and CoreSignal.  Decl. ¶ 38.  That information is contained within the

18   Cognism platform and is also available through the Kaspr plug-in when navigating to Mr. Kis'

19   LinkedIn profile.  Decl. ¶ 39.  Mr. Kis was twice notified that information about him was being

20   included in the Cognism platform; both times, he was given the opportunity to "opt out" and

21   have his information removed, and neither time did he make such an election.  Decl. ¶¶ 40-42.

22       The *only* way Plaintiff's information could possibly appear to any user of Cognism's

23   platform would be when the platform itself was actually used.  As such, a Cognism user could

24   conduct a search for Mr. Kis specifically by his name, or the user could conduct a search with

25   certain search criteria that would then list Mr. Kis if he fit that criteria.  Mr. Kis' name and

26   information were never listed on Cognism's public-facing website, www.cognism.com, and

27   never used in any promotional material or advertisement.  Decl. ¶ 45.

28

1  Cognism maintains records that allow it to see if an individual's information has been

2  accessed, and how many times.  Decl. ¶ 46.  Following the filing of this action, Cognism

3  checked to see the frequency of access to information regarding Mr. Kis.  Mr. Kis has been listed

4  only once in response to a customer inquiry.  Decl. ¶ 48.  That customer was Benjamin Osborn,

5  one of Plaintiff's attorneys in this case.  Decl. ¶ 48.  Attorney Osborn gained access to

6  Cognism's platform by representing to a Cognism sales representative that he often had "case

7  ideas" where he thought someone violated the law, but needed a tool to help him "come up with

8  people who'd bring suit" who, for example, worked for a particular employer or who lived in a

9  particular geography.  Decl. ¶ 49.  Attorney Osborn suggested that Cognism's platform might

10  facilitate that effort.  Based on Attorney Osborn's representations, he was granted access to

11  Cognism's platform from which he then accessed information relating to Mr. Kis.  Decl. ¶ 50.

12  ***No information relating to Mr. Kis has ever been accessed from Cognism's platform in***

13  ***response to any search other than the one performed by Attorney Osborn.***  Decl. ¶ 51.

14  **LEGAL STANDARD**

15  Rule 12(b)(1).  "If the court determines at any time that it lacks subject-matter

16  jurisdiction, the court *must* dismiss the action."  Fed. R. Civ. P. 12(h)(3) (emphasis added).  "The

17  party asserting subject matter jurisdiction bears the burden of establishing it."  *Holley v. Gilead*

18  *Scis., Inc.*, 410 F. Supp. 3d 1096, 1100 (N.D. Cal. 2019) (Tigar, J.) (citation omitted).  A "Rule

19  12(b)(1) jurisdictional attack may be facial or factual.  In a facial attack, the challenger asserts

20  that the allegations contained in a complaint are insufficient on their face to invoke federal

21  jurisdiction.  By contrast, in a factual attack, the challenger disputes the truth of the allegations

22  that, by themselves, would otherwise invoke federal jurisdiction."  *Safe Air*, 373 F.3d at 1039

23  (citation omitted).  "In resolving a facial attack, courts assume that the allegations are true, and

24  draw all reasonable inferences in the plaintiff's favor.  *Opperman v. Path, Inc.*, 87 F. Supp. 3d

25  1018, 1035 (N.D. Cal. 2014) (Tigar, J.) (citation omitted).  "In resolving a factual attack on

26  jurisdiction, the district court may review evidence beyond the complaint without converting the

27  motion to dismiss into a motion for summary judgment.  The court need not presume the

28  truthfulness of the plaintiff's allegations."  *Safe Air*, 373 F.3d at 1039 (citations omitted).

Rule 12(b)(6).  "To survive a motion to dismiss, a plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"  *Opperman*, 87 F. Supp. 3d at 1035 (Tigar, J.) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "On a motion to dismiss, the Court accepts the material facts alleged in the complaint, together with all reasonable inferences to be drawn from those facts, as true."  *Id.* at 1034-35 (citing *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).  However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."  *Iqbal*, 556 U.S. at 678.  "[T]o be entitled to the presumption of truth, allegations . . . must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

## ARGUMENT

## I.   PLAINTIFF LACKS ARTICLE III STANDING BECAUSE HE HAS NOT SUFFERED A LEGALLY COGNIZABLE INJURY-IN-FACT, NOR IS ANY PURPORTED "INJURY" FAIRLY TRACEABLE TO COGNISM.

The Court lacks subject matter jurisdiction because Plaintiff does not have standing.  It is black-letter law that, to establish Article III standing, a plaintiff must demonstrate that he has satisfied three irreducible requirements: (1) he has suffered an injury-in-fact (*i.e.*, the invasion of a legally protected interest which is concrete and particularized, and actual or imminent, not conjectural or hypothetical); (2) his injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

Here, Plaintiff has made no such showing.  Plaintiff generally alleges that he was injured in four ways: "[1] through the unlawful taking of [his] valuable intellectual property; [2] through the invasion of [his] privacy rights protected by statute and common law; [3] through Cognism's unlawful profiting from its exploitation of [his] name[], persona[], personal information, and the content of [his] emails; and [4] through harm to peace of mind."  Compl. ¶ 42; *see also id.* ¶¶ 85,

103, 126.  He also vaguely alludes to the possibility that at some unspecified time in the future, he may suffer identity theft or be defrauded.  *See id.* ¶ 87.  As discussed below, none of these purported "injuries" is legally sufficient to establish standing.  And even if one was, none of these "injuries" could be considered "fairly traceable" to Cognism, because the only person who has ever searched for or viewed Plaintiff's information is Plaintiff's own attorney.

### A.  Plaintiff Has Not Alleged Adequate Facts To Support *Any* Theory of Injury.

Despite advancing numerous *theories* of purported injury, Plaintiff fails to allege *facts* to support any of them, and for that threshold reason, he lacks standing as to any of his claims.  Where a plaintiff has neglected to allege facts to support a coherent theory of harm, that deficiency alone is sufficient to warrant dismissal of the claims for lack of standing.  *Low v. LinkedIn Corp.* is instructive.  No. 11-CV-01468-LHK, 2011 WL 5509848 (N.D. Cal. Nov. 11, 2011).  In *Low*, the plaintiff alleged that the defendant LinkedIn "allow[ed] transmission of users' personally identifiable browsing history and other personal information to third parties . . . in violation of federal and state laws."  *Id.* at *1.  The Court granted LinkedIn's motion to dismiss for lack of subject matter jurisdiction because the plaintiff failed to allege specific facts sufficient to support injury (beyond conclusory allegations):

> [Plaintiff] relies upon allegations that the data collection industry generally considers consumer information valuable, and that he relinquished his valuable personal information without the compensation to which he was due. . . . But [plaintiff] has failed to allege facts that demonstrate that he was economically harmed by [defendant's] practices.  [Plaintiff] has failed to allege how he was foreclosed from capitalizing on the value of his personal data or how he was "deprived of the economic value of [his] personal information simply because [his] unspecified personal information was [] collected by a third party."

*Id.* at *2, 5 (citations omitted).

Here, Plaintiff similarly fails to allege specific facts as to *how* he was harmed by Cognism's practices, *how* he was foreclosed from capitalizing on his identity by Cognism, or *how* he was deprived of the economic value of his identity by Cognism's practices.  His conclusory allegations of injury are thus insufficient as a matter of law, and compel the dismissal of his complaint.  *See Wheaton v. Apple Inc.*, No. C 19-02883 WHA, 2019 WL 5536214, at *6 (N.D. Cal. Oct. 25, 2019) (dismissing claim on standing grounds where the plaintiff "fail[ed] to

1   provide any evidence that anyone used the [challenged] function, let alone suffered an injury"

2   and relied only on conclusory allegations of harm); *In re iPhone Application Litig.*, No. 11-MD-

3   02250-LHK, 2011 WL 4403963, at *5 (N.D. Cal. Sept. 20, 2011) ("Plaintiffs have not yet

4   articulated a 'coherent and factually supported theory' of injury.  Plaintiffs have stated general

5   allegations about the [defendants], the market for apps, and similar abstract concepts (*e.g.*, lost

6   opportunity costs, value-for-value exchanges), but Plaintiffs have not identified an actual injury

7   to themselves sufficient for Article III standing."); *see also LaCourt v. Specific Media, Inc.*,

8   No. SACV 10-1256 GW JCGX, 2011 WL 1661532, at *5 (C.D. Cal. Apr. 28, 2011) (dismissing

9   complaint for lack of standing where plaintiff "does not identify a single individual who was

10   foreclosed from entering into a 'value-for-value exchange' as a result of [defendant's] alleged

11   conduct," "there are no facts in the [complaint] that indicate that the Plaintiffs themselves

12   ascribed an economic value to their unspecified personal information," and plaintiffs "do not

13   explain how they were 'deprived' of the economic value of their personal information simply

14   because their unspecified personal information was purportedly collected by a third party.").

15   **B.      The Conduct Allegedly Giving Rise to Plaintiff's Injuries Never Occurred.**

16        Yet even if Plaintiff's conclusory allegations of harm were enough—they are not—

17   Plaintiff lacks standing because none of the conduct he claims led to his purported injuries ever

18   occurred.  Cognism ***never*** displayed his information on its platform as part of any advertisement

19   or solicitation; his information merely resides within Cognism's platform itself, which is not

20   challenged as unlawful.  Decl. ¶¶ 20-30, 45.  Furthermore, Plaintiff's emails also were ***never***

21   intercepted or read by Cognism, and none of the information about Plaintiff contained within

22   Cognism's platform was obtained by such means.  Decl. ¶¶ 15-17.  Because the conduct that

23   supposedly gave rise to Plaintiff's "injuries" never occurred, Plaintiff has failed to adequately

24   allege injury that could confer standing.  *See Foster v. Essex Prop., Inc.*, No. 5:14-CV-05531-

25   EJD, 2017 WL 264390, at *1-3 (N.D. Cal. Jan. 20, 2017) (dismissing complaint for lack of

26   standing in data breach case where the plaintiffs' allegation that their personal information

27   including credit card numbers was stolen by hackers was contradicted by defendant's sworn

28   declarations showing that plaintiff never provided their credit card information to defendant and

plaintiffs' personal information was never stored on the breached servers, and thus the plaintiffs suffered no injury because their allegations were "factually impossible").

### C. The Use of a Person's Identity Is Not Theft of Intellectual Property.

Even if Cognism had used Plaintiff's identity as he claims—which it did not—each of Plaintiff's purported claims of injury fail as a matter of law.

Plaintiff's repeated assertion that use of his identity constitutes theft of his intellectual property (*see* Compl. ¶¶ 83, 85, 93) does not make it so. *Callahan v. Ancestry.com Inc.* is instructive. No. 20-CV-08437-LB, 2021 WL 2433893 (N.D. Cal. June 15, 2021) ("*Ancestry II*"). There, the plaintiffs challenged Ancestry's use of the plaintiffs' names and likenesses in promotional emails to sell paid subscriptions to its platform of personal and historical information (such as yearbook records) as violating the plaintiffs' statutory right of publicity. *Id.* at *1. The plaintiffs claimed in part that they were injured because the use of their identities in Ancestry's promotional emails constituted theft of their intellectual property. *Id.* The Court rejected the plaintiffs' contention, holding that the alleged use of their likenesses without permission was not theft of intellectual property where the likeness purportedly being used was that of a non-celebrity—that is, where there was no allegation that the plaintiffs were somehow deprived of commercial value or suffered some other separate injury. *Id.* at *5. As such, the Court granted Ancestry's motion to dismiss for lack of standing.

The application of the reasoning in *Ancestry II* to this case makes plain that Plaintiff has not adequately alleged standing. He does not claim he is a celebrity, nor does he claim (or could he claim) that he was in any way deprived of using his own likeness for commercial value. Accordingly, Plaintiff's assertion that use of his identity constitutes injury in the form of theft of his intellectual property should be rejected.

### D. A Mere Statutory Violation Is Insufficient to Establish Injury-In-Fact.

Plaintiff also attempts to establish injury by claiming that Cognism violated certain statutory proscriptions contained in the CRPL and CIPA. Compl. ¶¶ 103, 110. This effort also fails. The Supreme Court has repeatedly recognized that a statutory violation is insufficient to constitute an injury-in-fact. In *Spokeo, Inc. v. Robins*, a consumer alleged that Spokeo—an

online "people search engine" platform—published inaccurate information about him in violation of the Fair Credit Reporting Act ("FCRA").  578 U.S. 330, 333, *as revised* (May 24, 2016).  The Court held that the consumer "could not . . . allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III," as "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right" and "Article III standing requires a concrete injury even in the context of a statutory violation."  *Id.* at 341; *see also Ancestry II*, 2021 WL 2433893, at *3 ("There needs to be more than the statutory injury.")

Here, Plaintiff has not articulated any cognizable injury beyond his claim of statutory violations.  As such, he has failed to establish that he has standing to maintain this action.

### E. The Allegation That Defendant Profited From Use of a Person's Identity Does Not Mean That Plaintiff Suffered An Injury-In-Fact.

Plaintiff next asserts that Cognism "unlawful[ly] profit[ed] from its exploitation of [his] name[], persona[], personal information, and the content of . . . emails."  Compl. ¶¶ 42, 85, 93, 125.  However, Plaintiff's own lawyer is the only one to have accessed information about Plaintiff on Cognism's platform (and he did so in advance of paying for a subscription); no other user of Cognism's platform has ever viewed Plaintiff's information, and no user has ever paid a penny for doing so.  Decl. ¶ 48.  Consequently, Cognism has not profited from having Plaintiff's information stored in its platform.  *See Low*, 2011 WL 5509848, at *3 (dismissing complaint on standing grounds where "Plaintiff has not alleged that his [personal information] . . . was actually . . . transmitted to any third parties"; "Plaintiff was unable to articulate a theory of what information had actually been transmitted to third parties, how it had been transferred to third parties, and how LinkedIn had actually caused him harm.")

Even if Cognism had received revenue as a result of Mr. Kis' identity being accessed through its platform—it did not—that would still be insufficient to confer standing.  It does not follow from the fact that Cognism generated revenue that Plaintiff was somehow injured as a result.  In other words, Cognism's profits are not Plaintiff's injuries.

*In re Facebook, Inc., Consumer Priv. User Profile Litig.* is on all fours.  402 F. Supp. 3d 767 (N.D. Cal. 2019).  There, the plaintiff challenged Facebook's practice of sharing users' personal information with third parties. *Id.* at 776.  The Court rejected several of the plaintiffs' theories of harm:

> [A]lthough it's true that each user's information is worth a certain amount of money to Facebook and the companies Facebook gave it to, it does not follow that the same information, when not disclosed, has independent economic value to an individual user.  The plaintiffs do not plausibly allege that they intended to sell their non-disclosed personal information to someone else.  Nor, in any event, do they plausibly allege that someone else would have bought it as a stand-alone product.  The plaintiffs' economic-loss theory is therefore purely hypothetical and does not give rise to standing.

*Id.* at 784 (citations omitted); *see Callahan v. Ancestry.com Inc.*, No. 20-CV-08437-LB, 2021 WL 783524, at *5 (N.D. Cal. Mar. 1, 2021) ("*Ancestry I*") ("plaintiffs do not have a commercial interest in their public profiles that precludes [] use of the profiles for commercial gain").

### F.   "Harm To Peace of Mind" Is Not a Legally Cognizable Injury-In-Fact.

Plaintiff next vaguely alleges that he has suffered "harm to peace of mind" and is generally "uncomfortable" with Cognism's business model.  Compl. ¶¶ 42, 86.  This is not a legally sufficient injury-in-fact.  As an initial matter, Plaintiff's allegations of "harm to peace of mind" are completely divorced from reality.  Plaintiff asserts that he "is deeply uncomfortable in the knowledge that Cognism is using his name, photograph, and persona to advertise . . . ." (Compl. ¶ 86), *but no such advertisement using name, photograph or persona has ever occurred*.  Decl. ¶¶ 20-30.  He also claims that he is "deeply uncomfortable in the knowledge that Cognism intercepted and read the contents of his email communications to obtain his personal information" (Compl. ¶ 86), *but Cognism has never intercepted or read even a single one of Plaintiff's emails.*  Decl. ¶¶ 15-17.  Accordingly, any alleged mental anguish is implausible because the events that purportedly gave rise to his discomfort never occurred.

Yet, even if such events did occur, generalized allegations of "harm to peace of mind" are legally insufficient for standing purposes. *See Ancestry II,* 2021 WL 2433893, at *4 ("The plaintiffs contend that they suffered mental anguish from Ancestry's use of their likenesses . . . . There is no commercial loss or defamation here. . . . There is no other harm either. . . . There is only mental anguish here, and alone, it is not injury in fact.") (citations and footnotes omitted);

1   *see also Doak v. Cap. One, N.A.*, No. 5:18-CV-07102-EJD, 2019 WL 4645162, at *4- 6 (N.D.

2   Cal. Sept. 24, 2019) (dismissing complaint for lack of standing where plaintiff alleged "mental

3   anguish" and "emotional distress" as a result of defendant improperly accessing the plaintiff's

4   consumer credit report); *Low*, 2011 WL 5509848, at *3 (dismissing complaint for lack of

5   standing where plaintiff made conclusory allegations of "'embarrass[ment] and humiliat[ion

6   caused] by the disclosure of his [personal information]"). As a result, Plaintiff's claims of

7   mental distress—even beyond the fact that they are baseless—do not suffice to confer standing.

8
9       **G.      The Possible Risk of Identity Theft or Fraud Is Too Speculative To
                  Constitute An Injury-In-Fact.**

10      Plaintiff's final effort to create standing is his conclusory assertion that he is somehow at

11  increased risk of identity theft or fraud. *See* Compl. ¶ 87. Not only is this speculative allegation

12  baseless, but it is also insufficient to constitute an injury-in-fact. As an initial matter, the conduct

13  Plaintiff complains of—that Cognism is using his identity to solicit subscribers, and that

14  Cognism intercepted his email communications—could not have subjected Plaintiff to the risk of

15  identity theft or fraud, because the alleged conduct never occurred. *See* Decl. ¶¶ 15-17, 20-30.

16  Moreover, even if the alleged conduct had occurred, the potential risk of identity theft or fraud is

17  too speculative to constitute an injury-in-fact. *In re Facebook, Inc. Consumer Privacy User*

18  *Profile Litigation* is instructive. 402 F. Supp. 3d 767. There, plaintiffs asserted that "Facebook's

19  dissemination of their personal information increased the risk that they would become victims of

20  identity theft." *Id.* at 784. The Court held that the hypothetical increased risk of identity theft

21  was insufficient to confer standing because it was too speculative. *Id. Accord Clapper v.*

22  *Amnesty Int'l USA*, 568 U.S. 398, 410-14 (2013); *Verde v. Confi-Chek, Inc.*, No. 21 C 50092,

23  2021 WL 4264674, at *5 (N.D. Ill. Sept. 20, 2021).

24
25      **H.      Even If Plaintiff Were Able To Articulate An Injury, That Injury Is Not
                  Fairly Traceable to Cognism, But To Plaintiff's Attorney.**

26      In order for Plaintiff to have standing, "there must be a causal connection between the

27  injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the

28  challenged action of the defendant." *Lujan*, 504 U.S. at 560 (citation and quotations omitted).

1  Here, even if Plaintiff were able to allege some injury-in-fact, and as explained above he cannot,

2  he still has and cannot adequately allege that any purported injury is "fairly traceable" to

3  Cognism's conduct because Plaintiff's information was solicited and viewed only by Plaintiff's

4  own counsel—and nobody else.  As a result, any purported "injury" was created by the conduct

5  of Plaintiff's counsel, not by Cognism.  Where the plaintiff's counsel is directly responsible for

6  causing the alleged injury, that injury is not "fairly traceable" to the defendant.  *See Butt v. FD*

7  *Holdings, LLC*, 799 F. App'x 350, 353 (6th Cir. 2020) (plaintiff lacked standing to sue because

8  the alleged injury—harm due to false information on his credit report—was caused by his own

9  attorney's failure to properly complete certain bankruptcy forms; "[a]ny injury that [the plaintiff]

10  conceivably suffered was therefore self-inflicted, which means that it was not 'fairly traceable to

11  the challenged conduct of the defendant.'") (citation omitted); *Gearhart v. Express Scripts, Inc.*,

12  422 F. Supp. 3d 1217, 1223-24 (E.D. Ky. 2019) (plaintiff lacked standing because the alleged

13  injury—the payment of a fee to obtain medical records—was fairly traceable to plaintiff's

14  counsel's decision, not defendant's conduct; "Plaintiff's alleged injury does not result from any

15  conduct of [the defendant].  Rather, Plaintiff's injury stems directly and entirely from his

16  lawyers' . . . decision to pay [] for records as opposed to employing the means necessary to

17  obtain the records for free.").  Based on the above, Plaintiff does not have standing to bring any

18  of his causes of action, and his complaint should be dismissed.

19

20  **II.     PLAINTIFF DOES NOT ADEQUATELY ALLEGE A STATUTORY RIGHT-OF-PUBLICITY CLAIM OR A COMMON LAW MISAPPROPRIATION CLAIM.**

21         To state a claim for common law misappropriation under California law, a plaintiff must

22  show: (1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name

23  or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and

24  (4) resulting injury.  *Abdul-Jabbar v. Gen. Motors Corp.*, 85 F.3d 407, 413-14 (9th Cir. 1996).

25  To state a statutory right-of-publicity claim under Section 3344, a plaintiff must allege the

26  aforementioned four elements, limited to commercial appropriations, plus two additional

27  elements: (5) knowing use by the defendant; and (6) a direct connection between the alleged use

28  and a commercial purpose.  *Id.* at 414; *see* Cal. Civ. Code § 3344(a) ("Any person who

1   knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, on or

2   in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting

3   purchases of, products, merchandise, goods or services, without such person's prior consent . . .

4   shall be liable for any damages sustained by the person or persons injured as a result thereof.")

5          Here, both the Publicity Claim and Common Law Claim fail because Plaintiff has not

6   adequately alleged that Cognism has used or appropriated Plaintiff's identity, and because

7   Plaintiff has not adequately alleged that he has suffered any resulting injury.

8

### A.   Cognism Has Not Used Or Appropriated Plaintiff's Identity In A Manner That Gives Rise To Either His Publicity Claim or His Common Law Claim.

9

10          As an initial matter, certain of the words in the Complaint must be clarified.  In Paragraph

11   59 of the Complaint, Plaintiff asserts that "Cognism displays a profile of personal information

12   about Mr. Kis on www.cognism.com, which Cognism intends to be used by B2B marketers and

13   salespeople who wish to contact Mr. Kis with unsolicited promotions."  Compl. ¶ 59.  As noted in

14   the declaration of Mr. Isilay, Plaintiff's name and information have never been listed on

15   Cognism's public-facing website—ever.  *See supra* p. 6.  Rather, Plaintiff's identity only appears

16   within the Cognism platform itself when it is used by a Cognism customer.  *See supra* p. 6.

17   Indeed, Plaintiff's counsel appears to be well-aware of this fact given that the screenshots included

18   in his Complaint are from Cognism's platform and not from Cognism's public-facing website.

19   *See, e.g.*, Compl. ¶¶ 60-62.  Moreover, Plaintiff himself explains that "Cognism does not sell

20   cognism.com subscriptions to the general public, nor can the general public access profiles on

21   cognism.com."  Compl. ¶ 13.  Accordingly, we understand the Complaint to allege that Mr. Kis'

22   name and information could be accessed "through" the Cognism platform, which in turn could be

23   accessed "through" Cognism's website.  Because we fully expect Plaintiff not to contest this

24   interpretation of his Complaint in his response to this motion, we will proceed with that

25   understanding of the Complaint.  Properly construed, Plaintiff's Publicity Claim and Common

26   Law Claim then boil down to a challenge to Cognism's inclusion of Plaintiff's identity in its

27   platform.  Compl. ¶¶ 60-66.  But this is not enough.

28

1   To sustain each of the Publicity and Common Law Claims, Plaintiff must specifically

2   allege that Cognism used his name or information in an advertisement or promotion that was not

3   the use of the platform itself.  *See Brooks v. Thomson Reuters Corp.*, No. 21-CV-01418-EMC,

4   2021 WL 3621837, at *4 (N.D. Cal. Aug. 16, 2021) (finding it persuasive that "this is not a right

5   of publicity case because Thomson Reuters is not using Plaintiffs' name or likeness 'for

6   promotional purposes,' *i.e.*, *to advertise or promote a separate product or service*"; "Virtually all

7   right of publicity cases involve the use of a person's name or likeness *to advertise a separate

8   product or service*.") (citations omitted) (emphasis added); *see also Camacho v. Control Grp.

9   Media Co., LLC*, No. 21-CV-1954-MMA (MDD), 2022 WL 3093306, at *25 (S.D. Cal. July 18,

10  2022) ("As to this requirement, '[a] review of the cases finding that commercial speech violates

11  the right of publicity strongly suggests that advertisements are actionable when the plaintiff's

12  identity is used, without consent, *to promote an unrelated product*.'") (citations and footnote

13  omitted) (collecting cases) (emphasis added), *appeal filed*, No. 22-55735 (9th Cir. Aug. 3, 2022);

14  J. THOMAS MCCARTHY & ROGER E. SCHECHTER, 1 RIGHTS OF PUBLICITY AND PRIVACY § 5:19 (2d

15  ed. May 2022 Update) (explaining the fundamental premise of a right of publicity claim is that a

16  person's identity must be used "to draw attention to a product or advertisement").

17  Here, it is not alleged—nor could it be—that Cognism uses Plaintiff's information in

18  connection with any advertising or promotional material.  *See supra* p. 6.  In contrast to some of

19  its competitors, Cognism's platform does not contain "teaser profiles," "landing pages," "preview

20  pages," or other standalone marketing pages that contain promotional material connected to a

21  specific person's identity.  *See supra* p. 5.  Instead, Cognism uses fictitious profiles as part of its

22  promotional marketing campaigns or uses information belonging to Cognism employees who have

23  consented to the use of their identities in promotional materials.  *See supra* p. 5.

24  That Cognism does not use teaser profiles on any public-facing website is critical, because

25  certain cases in which courts have allowed right-of-publicity and misappropriation claims to

26  survive motions to dismiss have relied on the presence of the teaser profile as the relevant loci for

27  finding a use or appropriation.  For example, in *Callahan v. PeopleConnect, Inc.*, the plaintiff sued

28  a yearbook aggregator website under Section 3344.  No. 20-CV-09203-EMC, 2021 WL 5050079,

1   at *1-2 (N.D. Cal. Nov. 1, 2021), *motion to certify appeal denied*, 2022 WL 2132912 (N.D. Cal.

2   June 14, 2022).  In that case, on the defendant's website, if a visitor typed the plaintiff's name into

3   the search bar, the website "display[ed] a page showing the photograph of [the plaintiff] and his

4   name, accompanied by a link marked 'Own this yearbook today,' which le[d] to a page soliciting

5   the purchase of the yearbook for $99.95." *Id.* at *1.  Similarly, "when the search results

6   provide[d] the records associated with [the plaintiff], adjacent to the list of records containing [his]

7   name, photograph, and likeness [was] an advertisement promoting the subscription membership."

8   *Id.* (quotations omitted).  By contrast, Cognism's platform has no such "teaser" advertisement on

9   any page with Plaintiff's identity.  *See supra* p. 5.

10        In fact, the presence of a teaser profile has been a dispositive consideration for courts in

11   allowing right-of-publicity claims to survive motions to dismiss.  *See, e.g.*, *Kellman v. Spokeo,*

12   *Inc.*, No. 3:21-CV-08976-WHO, 2022 WL 1157500, at *1 (N.D. Cal. Apr. 19, 2022) ("To

13   advertise paid subscriptions to the site, Spokeo uses 'teasers'—profiles of real people with some

14   information redacted."), *motion to certify appeal denied*, 2022 WL 2965399 (N.D. Cal. July 8,

15   2022); *Martinez v. ZoomInfo Techs. Inc.*, No. C21-5725 MJP, 2022 WL 1078630, at *1 (W.D.

16   Wash. Apr. 11, 2022) ("when a user searches for an individual either on a search engine or

17   ZoomInfo, ZoomInfo displays 'teaser profiles' showing some information about the individual

18   and offering 'full access' in exchange for a fee-based subscription"), *appeal filed*, No. 22-35305

19   (9th Cir. Apr. 15, 2022).[4]

20        By contrast, Cognism does not use teaser profiles.  Names within its platform can only be

21   accessed by actual customers, whether they are paying subscribers or potential subscribers who

22   have availed themselves of Cognism's free trial.  *See supra* pp. 5-6.  And the available information

23   is the same in all instances—no information about any particular individual is held back during the

24

---

25        [4] *See also Boshears v. PeopleConnect, Inc.*, No. C21-1222 MJP, 2022 WL 888300, at *1
(W.D. Wash. Mar. 25, 2022) (visitors are presented with a "'banner ad' adjacent to photographs

26   of an individual for whom the user searched" to promote a paid subscription), *appeal filed*, No.
22-35262 (9th Cir. Mar. 28, 2022); *Siegel v. ZoomInfo Techs., LLC*, No. 21 C 2032, 2021 WL

27   4306148, at *1, 3 (N.D. Ill. Sept. 22, 2021) ("ZoomInfo creates landing pages for each individual
found within its database that features the individual's full name, alongside certain uniquely

28   identifying information such as the individual's location and a preview of the individual's
[information]"; "The free previews are part of ZoomInfo's efforts to sell its product.")

trial, and no information about any person is used to advertise the platform. *See supra* p. 6. Put simply, the platform from which a Cognism customer could get information about Plaintiff *is* itself the product. And because the "list" containing Plaintiff's information is itself the product, there is no use of the Plaintiff's identity that is distinct from the product itself and thus no misappropriation of the Plaintiff's identity that gives rise to a valid legal claim.

To this point, *Brooks v. Thomson Reuters* is instructive. 2021 WL 3621837. There, the plaintiffs sued Thomson Reuters for collecting a "dossier" of plaintiffs' information, which included names, criminal history and social network information. *Id.* at *1. The Court held that such use "is not a misappropriation of their name or likeness to advertise or promote a *separate* product or service." *Id.* at *4 (emphasis in original) (collecting right-of-publicity cases involving promotion of separate products). The Court reasoned that "[t]he use of a person's name and likeness to promote a product (*other than that which pertains to the person themselves*) is the essence of an 'appropriation' of one's name or likeness." *Id.* at *5 (emphasis added). "Plaintiffs' name or likeness . . . were not [used] to advertise or promote the [] platform or some other third party's products or services; they were sent only to [] subscribers who deliberately paid Thomson Reuters to receive information about them." *Id.* The Court thus concluded that "Plaintiffs ha[d] failed to state a claim for a violation of the right of publicity because Thomson Reuters did not appropriate their name or likeness." *Id.*; *accord Camacho*, 2022 WL 3093306, at *26 ("[T]he issue boils down to whether Plaintiff [] sufficiently alleges Defendants use Plaintiff Cotta's identity to promote a product that is *separate and different from the entire product or service that Defendants advertise*.") (emphasis added).[5] Simply put, courts recognize that there

---

[5] *See also Dobrowolski v. Intelius, Inc.*, No. 17 CV 1406, 2018 WL 11185289, at *3 (N.D. Ill. May 21, 2018) ("The marketing page lists defendants' reports . . . and for each listing there is a preview of the information . . . . The plaintiffs' identities are not used to promote a separate product—they are used because plaintiffs' identities are part of the product offered for sale.") (citations omitted); *Thompson v. Getty Images (US), Inc.*, No. 13 C 1063, 2013 WL 3321612, at *2 (N.D. Ill. July 1, 2013) (IRPA "does not prohibit the mere sale of someone's photograph. Rather, the IRPA prohibits the use of an individual's image *to promote or entice the purchase of some other product than the photograph itself*.") (citations omitted) (emphasis added); *U.S. News & World Rep., Inc. v. Avrahami*, Nos. 95-1318 (Law), 96-203 (Chancery), 1996 WL 1065557, at *7 (Va. Cir. Ct. June 13, 1996) ("The inclusion of a name as part of a larger mailing list . . . does not constitute use of each one of those names as part of an advertisement or solicitation for patronage of a particular product or service.") (citation and quotations omitted).

can be no separate appropriation where Plaintiff's identity is *itself* the product.[6]

In sum, because Cognism does not use teaser profiles that include any personally identifiable information, and because Plaintiff's identity is itself part-and-parcel of Cognism's product, Cognism does not use or appropriate Plaintiff's identity in any separate advertising or solicitation, and Plaintiff's Publicity Claim and Common Law Claim thus both must fail.

### B.   Plaintiff Has Not Adequately Alleged That He Has Suffered Any Injury.

Plaintiff's Common Law and Publicity Claims also fail because he has not adequately pled any resulting legally cognizable injury stemming from the alleged use.  *See Cohen v. Facebook, Inc.*, 798 F. Supp. 2d 1090, 1097 (N.D. Cal. 2011) (dismissing statutory and common law right-of-publicity claims for lack of injury where "plaintiffs' sole allegation relating to injury is the conclusory assertion, repeated at least twice in the complaint, that they 'have suffered injury-in-fact by having their name[s] and likeness[es] misappropriated without their knowledge or consent.'") (citation omitted).  For the same reasons that Plaintiff has not suffered an Article III injury-in-fact, *see supra* Section I, Plaintiff has not suffered any resulting injury here.

### III.   PLAINTIFF DOES NOT ADEQUATELY ALLEGE A VIOLATION OF SECTIONS 631, 632 AND 637 OF THE CALIFORNIA INVASION OF PRIVACY ACT ("CIPA").

Plaintiff has not stated a claim under the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 630 *et seq*.  Although pled as a single cause of action, Plaintiff asserts claims under three different CIPA sections: Section 631 for wiretapping, Section 632 for eavesdropping on or recording confidential communications, and Section 637 for the disclosure of telegraphic or telephonic messages.  None of the sections cited by Plaintiff state a valid cause of action.

### A.   Section 631

"The California Supreme Court has held that section 631 protects against three distinct types of harms: 'intentional wiretapping, willfully attempting to learn the contents or meaning of

---

[6] Because there has been no appropriation, there necessarily is no "direct connection" between any appropriation and any commercial purpose for the Statutory Claim.  *E.g.*, *Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190, 211 (2017) (finding no likelihood of success on statutory right-of-publicity claim where "[Plaintiff] has not even alleged . . . that any advertiser used his name [and] thus cannot establish that anyone . . . obtained an advantage through [its] use").

1  a communication in transit over a wire, and attempting to use or communicate information

2  obtained as a result of engaging in either of the previous two activities.'" *In re Google Inc.*,

3  No. 13-MD-02430-LHK, 2013 WL 5423918, at *15 (N.D. Cal. Sept. 26, 2013) (citation

4  omitted), *motion to certify appeal denied*, 2014 WL 294441 (N.D. Cal. Jan. 27, 2014).  Here,

5  Plaintiff's Section 631 claim fails because Plaintiff does not adequately allege that:  (1) Cognism

6  tapped or intercepted any communication "in transit," and (2) Cognism collected or used the

7  substantive "contents" of any communication.

8       *First*, the Complaint does not allege specific facts that Cognism taps or intercepts any

9  communications that are "in transit."  Nor could there be any such good faith allegation as

10  Cognism does not engage in any such interception.  *See supra* pp. 4-5.  Rather, despite

11  repeatedly using the expression "captures, intercepts, and stores" (Compl. ¶ 20), what Plaintiff

12  really complains about is Cognism's method for "community-sourced data" collection, whereby

13  certain Cognism customers have expressly consented to Cognism capturing signature block

14  information from their own stored email folders.  Compl. ¶¶ 20-22.  This collection of stored

15  communications does not constitute a tap or interception within the meaning of CIPA, which

16  requires interception contemporaneous with transmission.

17       In *Opperman v. Path.*, the Court dismissed Wiretap Act and CIPA claims precisely

18  because there was no alleged contemporaneous interception of any communication.  87 F. Supp.

19  3d at 1063-64 (Tigar, J.).  There, the plaintiffs sued Apple and app developers alleging the

20  surreptitious stealing and dissemination of contact information stored on phones in violation of

21  the Wiretap Act and CIPA, among other claims.  *Id.* at 1029-30.  The Court dismissed both

22  wiretap claims because there was no contemporaneous interception:

23       The [complaint] fails to allege that Defendant intercepted any communication
         contemporaneously with its transmission.  Although [Defendant] allegedly transmitted the
24       Class Members' Contact Address Books from [Plaintiffs'] mobile devices to [Defendant's]
         servers, [Defendant] did not intercept a communication to do so.  Similarly, the Ninth Circuit
25       has noted that *interception means communication contemporaneous with transmission.*

26  *Id.* at 1063 (citations and quotations omitted) (emphasis added).  *See also In re Vizio, Inc.,*

27  *Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1227-28 (C.D. Cal. 2017) (dismissing Wiretap Act

28  and CIPA claim where "Plaintiffs have not articulated with sufficient clarity *when* [defendant]

1     supposedly intercepted their communications" beyond "their conclusory allegation that

2     [defendant] intercepted their electronic communications 'during transmission'") (emphasis

3     added) (citation omitted); *Bradley v. Google, Inc.*, No. C 06-05289 WHA, 2006 WL 3798134, at

4     *5-6 (N.D. Cal. Dec. 22, 2006) (dismissing ECPA and CIPA claims).  Because Plaintiff has

5     not—and cannot—allege that any of his email communications were contemporaneously

6     intercepted (or intercepted at all), Plaintiff's Section 631 claim should be dismissed.

7        *Second*, Plaintiff's Section 631 claim also fails because Plaintiff does not adequately

8     allege that Cognism collects or uses the substantive contents of any email communication.

9     "[T]he term 'contents' refers to the *intended message conveyed by the communication*, and does

10    not include record information regarding the characteristics of the message that is generated in

11    the course of the communication."  *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106-07 (9th Cir.

12    2014) (contents are the "substance, purport, or meaning" of a communication) (emphasis added).

13    Here, Plaintiff alleges that Cognism's software "extracts contact, job title, and other information

14    from email signature blocks."  Compl. ¶ 80.  But the email signature blocks that were collected

15    are not the "contents" of a communication within the meaning of CIPA.

16        The decision in *In re iPhone Application Litig.* is instructive on this point.  There, the

17    Court dismissed a Wiretap Act claim because certain automatically generated data about a

18    telephone call (*e.g.*, information about the location of parties to a phone call) was not content

19    capable of interception, reasoning that "content is limited to information the user intended to

20    communicate, such as the words spoken in a phone call" and thus "data [that] is generated

21    automatically . . . does not constitute content susceptible to interception."  844 F. Supp. 2d 1040,

22    1061 (N.D. Cal. 2012) (quotations omitted).  "[T]he Court conclude[d] that . . . personally

23    identifiable information that is automatically generated by the communication but that does not

24    comprise the *substance, purport, or meaning* of that communication is not covered."  *Id.* at 1062

25    (emphasis added).  So too here.  Contact information in email signatures does not "comprise the

26    substance, purport, or meaning" of any communication.  *See In re Zynga Priv. Litig.*, 750 F.3d at

27    1107 ("[A]n allegation that [defendants] disclosed personally identifiable information is not

28    equivalent to an allegation that they disclosed the contents of a communication."; "The referer

1    [sic] header information that [defendants] transmitted to third parties included the user's

2    Facebook ID [which] does not meet the definition of 'contents,' because these pieces of

3    information are not the 'substance, purport, or meaning' of a communication."); *Svenson v.*

4    *Google Inc.*, 65 F. Supp. 3d 717, 720, 730 (N.D. Cal. 2014) (a "user's name, email address,

5    Google account name, home city and state, zip code, and [] telephone number" were not the

6    "contents of a communication" under the Stored Communications Act).

7        **B.      Section 632**

8            To the extent Plaintiff's Privacy Claim is premised on Section 632, that also fails.  That

9    Section makes a person is liable if he/she "intentionally and without the consent of all parties to a

10   *confidential communication, uses an electronic amplifying or recording device to eavesdrop*

11   *upon or record the confidential communication*."  Cal. Penal Code § 632 (emphasis added).  "To

12   state a claim under section 632, a plaintiff must allege [1] an electronic recording of or

13   eavesdropping [2] on a confidential communication, and [3] that not all parties consented to the

14   eavesdropping."  *In re Google Inc.*, 2013 WL 5423918, at *15 (citation omitted).  Here, Plaintiff

15   has not alleged facts to support any of these elements.

16           *First*, Plaintiff has not alleged the use of any electronic amplifying or recording device to

17   eavesdrop upon or record any conversation at all.  "California courts interpret 'eavesdrop,' as

18   used in section 632, to refer to a third party secretly listening to a conversation between two

19   other parties."  *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 827 (N.D. Cal. 2020)

20   (citations omitted); *Ades v. Omni Hotels Mgmt. Corp.*, 46 F. Supp. 3d 999, 1017 (C.D. Cal.

21   2014) ("Specifically, § 632 holds liable anyone who 'eavesdrops upon or records' a *telephone*

22   *communication*") (emphasis added).  Plaintiff has not alleged that Cognism secretly listened in or

23   recorded any conversation, nor has he alleged how one could eavesdrop upon or make an

24   electronic recording of a written email communication.  *See Diamond v. Google, Inc.*, No. CIV-

25   1202715, slip op. at 2 (Cal. Super. Ct., Marin Cnty. Nov. 9, 2012) (dismissing CIPA Section 632

26   claim for email communications because "Plaintiff [] does not explain how Google could have

27   possibly 'overheard' the emails, 'by means of any electronic amplifying or recording device'"

28

1   and "also has not alleged facts showing that Google's practice constituted 'recording' of the

2   emails . . . [T]he complaint does not show 'eavesdropping' within the meaning of section 632.")

3       *Second*, Plaintiff's claim fails because one does not have an objectively reasonable

4   expectation that emails are confidential; rather, they can be shared beyond the recipient without

5   the sender's consent.  In *In re Google Inc.*, the Court dismissed a Section 632 claim relating to

6   emails because "Plaintiffs have not plausibly alleged that they had an objectively reasonable

7   expectation that their email communications were 'confidential' under the terms of section 632."

8   2013 WL 5423918, at *23 (footnote omitted).  The Court reasoned that "email services are by

9   their very nature recorded on the computer of at least the recipient, who may then easily transmit

10  the communication to anyone else who has access to the internet or print the communications."

11  *Id.*; *see also Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014) ("California

12  appeals courts have generally found that Internet-based communications are not 'confidential'

13  within the meaning of section 632, because such communications can easily be shared by, for

14  instance, the recipient(s) of the communications.") (collecting cases) (citations omitted).

15      **C.    Section 637**

16      Plaintiff's Section 637 claim for the disclosure of the "contents of a telegraphic or

17  telephonic message" also fails.  Section 637 makes liable a "person not a party to a telegraphic or

18  telephonic communication who willfully discloses the contents of a telegraphic or telephonic

19  message, or any part thereof, addressed to another person, without the permission of that

20  person."  Cal. Penal Code § 637.  Emails are not communications using telephone or telegraph

21  wires in any reasonable understanding of those words.  *See Diamond*, CIV-1202715, slip op. at 2

22  (dismissing CIPA claim because "Plaintiff's view of the phrase 'telegraph or telephone wire' [as

23  encompassing emails] . . . is contrary to common sense and long-accepted principles of statutory

24  interpretation. . . . Plaintiff alleges no facts allowing email communications to be characterized

25  as 'telephone' or 'telegraph' transmissions.") (citation omitted).[7]

26

27

28      _____

        [7] The "telegraphic or telephonic" language of Section 637 was enacted in 1967—well before
        the advent of email communications—and thus could not possibly be intended to cover emails.

Here, Plaintiff has not even alleged the presence of any telegraphic or telephonic communication, or that he (or Cognism) participated in any such conversation.  Plaintiff simply has alleged no facts about *any* "telegraphic" or "telephonic" communication.  Plaintiff also therefore has not specifically alleged that any information about him obtained from a telegraphic or telephonic communication was disclosed to anyone, nor could he as it never was.  Moreover, just as for the Section 631 claim, Plaintiff has only alleged email signature information was collected, which is not the "contents" of any communication under CIPA.  *See supra* pp. 22-23.

## IV.   PLAINTIFF DOES NOT ADEQUATELY ALLEGE A VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW ("UCL").

Plaintiff cannot state a claim under California's Unfair Competition Law ("UCL").  To have standing to assert a UCL claim, Plaintiff must adequately allege a loss of money or property.  *In re iPhone Application Litig.*, 844 F. Supp. 2d at 1071.  Here, Plaintiff's UCL claim fails because he has not done so.  For the same reasons Plaintiff has not suffered an injury for Article III standing, *see supra* Section I, he has not suffered any loss of money or property.  *See Opperman*, 87 F. Supp. 3d at 1058 (Tigar, J.) ("The Court will also dismiss Plaintiffs' UCL claims . . . because, in order to have standing to assert their UCL claims, Plaintiffs must show that they 'lost money or property,' and . . . they have failed to make such a showing.") (citation omitted).  This is especially so because "the standard [for UCL standing] is [] *more restrictive* than the Constitutional standing requirement of 'injury in fact.'"  *Cohen*, 798 F. Supp. 2d at 1098 (emphasis added) (citation omitted).  Moreover, "[n]umerous courts have held that a plaintiff's 'personal information' does not constitute money or property under the UCL."  *In re iPhone Application Litig.*, 2011 WL 4403963, at *14 (collecting cases).  Nor does the content of their internet communications.  *See Campbell*, 77 F. Supp. 3d at 849 ("courts have consistently rejected" argument that consumers "have a property interest in their personal information, including the content of their messages") (citations omitted).  Because Plaintiff has not suffered a loss of money or property, his UCL claim should be dismissed.

## CONCLUSION

For the reasons set forth herein, the Complaint should be dismissed.

1    Respectfully submitted,

2    Dated: 12/12/2022                    By: /s/ *Michael S. Sommer*

3                                         Michael S. Sommer (admitted *pro hac vice*)
                                          JaeYoung Ariel Jeong (admitted *pro hac vice*)
4                                         Derek K. Mong (admitted *pro hac vice*)
                                          WILSON SONSINI GOODRICH & ROSATI
5                                         Professional Corporation
                                          1301 Avenue of the Americas, 40th Floor
6                                         New York, NY 10019-6022
                                          Telephone: (212) 999-5800
7                                         Facsimile:  (212) 999-5899
                                          Email:  msommer@wsgr.com
8                                                   ajeong@wsgr.com
                                                    dmong@wsgr.com
9
                                          Colleen Bal, State Bar No. 167637
10                                        WILSON SONSINI GOODRICH & ROSATI
                                          Professional Corporation
11                                        One Market Plaza Spear Tower, Suite 3300
                                          San Francisco, CA 94105
12                                        Telephone: (415) 947-2000
                                          Facsimile:  (415) 947-2099
13                                        Email: cbal@wsgr.com

14                                        *Attorneys for Defendant Cognism Inc.*

15

16

17

18

19

20

21

22

23

24

25

26

27

28