**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

NICHOLAS KIS, on behalf of himself and all others similarly situated,

               Plaintiff,

    v.

COGNISM INC.,

               Defendant.

CASE NO.:  4:22-cv-05322-JST

**DECLARATION OF JAMES ISILAY**

I, James Isilay, hereby declare, pursuant to 28 U.S.C § 1746, as follows:

1.     I am the Founder and Chief Executive Officer of Cognism Ltd., the parent company of Defendant Cognism Inc. ("Cognism").

**COGNISM COMPANY BACKGROUND**

2.     Cognism is a sales lead generation platform that helps companies connect with potential customers.

3.     To facilitate such connections, Cognism collects information about business professionals, such as their employer, job title, office location, and contact information.

4.     The first layer of data Cognism collects is from third-party data brokers, such as Pipl and CoreSignal, who sell "base" information (*e.g.*, name, title) about business professionals to Cognism, often collected from a variety of public sources (*e.g.*, website directories).

5.     The vast majority of information on Cognism's platform is collected through this process, which is a standard industry practice.

6.     Cognism then confirms the integrity of the information, for example, by monitoring publicly available information from corporate websites and calling a listed phone number to confirm the identity of the recipient.

7.     Cognism also performs other checks to ensure the integrity of the data, including verifying that only business contact information (rather than personal contact information) is being collected and flagging any individuals who are on any government-run "Do Not Call" registries.

DocuSign Envelope ID: B7074EE2-3750-4EB6-BBG2-D0B8A2361514

## COGNISM SIGNATURES

8.      For a brief period of time in the summer of 2022, Cognism experimented with additional data collection through the Cognism "Signatures" product, whereby Cognism offered certain customers access to an email signature standardization tool in exchange for access to the customer's stored email communications.

9.      The Signatures product allowed Cognism to capture, with the customer's consent, the email signature blocks of individuals with whom the customer's employees were communicating and then added any new contact information (*e.g.*, company name, company address, or business telephone) to an existing "base" profile.

10.     The email signature blocks were collected from an employee's inbox data once received by the employee and were not intercepted while the communication was in transit to the employee.

11.     The substantive contents of the email messages themselves were not collected, and no new profiles were generated as a result of this process; rather, existing profiles were simply supplemented.

12.     The Cognism Signature Terms and Conditions, which were publicly available on Cognism's website, explained:

> In return for the provision of the service by Cognism, under these Standard Terms, the Customer permits Cognism and members of its group to: [1] use staff business contact information (of those staff who make use of personalised email signatures) for marketing purposes, including B2B direct marketing; and [2] access the staff's email inbox content, specifically the information in email signatures of received emails and IP addresses.  Third party marketers may also access this contact information for use in their marketing campaigns.

13.     The Terms and Conditions also recognized that the "Customer herby grants to the Cognism Group a worldwide, royalty-free, perpetual, irrevocable, non-exclusive, transferable and sublicensable license to access the Signature Data and Inbox Data and to use this at the Cognism Group's sole discretion (including to copy, distribute, disclose, assign, sell, rent license, publish, and/or display)" and that the "Customer acknowledges, understands, authorises and agrees that during the Term the Cognism Group will access Inbox Data and use natural language

DECLARATION OF JAMES ISILAY
CASE NO.: 4:22-CV-05322-JST

1   processing software to recognise email signatures and extract the contact data contained within

2   to use this for its own purposes."

3        14.    The Terms and Conditions defined "Inbox Data" as "data and content in the

4   Platform Users' email accounts including email signatures of all received emails and IP

5   addresses."

6        15.    None of the information contained in Cognism's platform relating to Plaintiff

7   Nicholas Kis was collected from the Cognism Signatures product.

8        16.    Cognism never intercepted or read Mr. Kis' emails.

9        17.    Cognism never collected any information relating to Mr. Kis from its subscribers'

10  emails.

11  **COGNISM PLATFORM**

12       18.    Cognism's aggregated database of verified information about business

13  professionals is available through Cognism's platform, which allows an individual to search by

14  various criteria to identify potential sales leads.

15       19.    For example, the platform allows for a sales representative to search for business

16  professionals in a given geography with a certain title and allows the user to download a list of

17  potential sales targets.

18       20.    There is no "limited access" or "limited use" version of the platform; when a user

19  gets access to Cognism's platform, they have access to the entire platform and all of its

20  information.

21       21.    The Cognism platform has no teaser profiles or landing pages.

22       22.    In other words, there is no standalone webpage containing an individual's identity

23  with a solicitation to buy anything—not a subscription to Cognism's platform, not any particular

24  individual's contact information, or otherwise.

25       23.    Cognism also does not engage in search engine optimization ("SEO") or indexing

26  practices such that an individual's information on Cognism would appear in a search engine

27  search result.

28

24.     The individuals whose names and likenesses appear on Cognism's website are company employees who consented to use of their identities for marketing purposes, or are fictitious persons created for the website.

25.     Mr. Kis' name and information have never appeared on Cognism's public-facing website at www.cognism.com.

26.     Cognism does not use Mr. Kis' information in connection with any advertising or promotional material.

27.     Cognism allows potential customers the opportunity to try its platform for free.

28.     Such potential customers first interface with a Cognism sales representative to receive a demonstration of the platform and to receive temporary log-in credentials.

29.     The temporary log-in credentials permit the trial user to use the full platform for a limited period of time or for a limited number of contact information downloads.

30.     No information about any particular individual is held back during the trial, and no information about any person is used to advertise Cognism's platform.

**KASPR**

31.     One additional way that information about Mr. Kis can be accessed is through the Kaspr plug-in.

32.     Kaspr is a plug-in or extension to an internet browser that allows an individual searching on the LinkedIn platform to view more information about that individual.

33.     To use Kaspr, an individual must first register with Kaspr online and download the browser plug-in.

34.     Once the user signs up and downloads the plug-in, the next time the user visits a LinkedIn profile, he or she can click on the in-browser Kaspr icon to reveal whether any additional information is available for purchase.

35.     Kaspr does not have any specific "landing pages" for specific individuals; everything is viewed from within the LinkedIn profile itself.

36.    Kaspr has no search functionality, and all searches for individuals must be performed within LinkedIn itself—Kaspr is merely a layer on top of the information that a LinkedIn profile provides.

37.    If a user does not have a LinkedIn profile, Kaspr will not work.

**PLAINTIFF NICHOLAS KIS**

38.    Information concerning Mr. Kis was obtained by Cognism from third party data sellers Pipl and CoreSignal.

39.    That information is contained within the Cognism platform, and information about Mr. Kis is also available through the Kaspr plug-in when navigating to Mr. Kis' LinkedIn profile.

40.    Mr. Kis was twice notified that information about him was being included in the Cognism platform, once on January 14, 2021, and again on November 15, 2021.

41.    Cognism notified Mr. Kis as part of its standard process to notify individuals that Cognism held his publicly available business information and informed him of the purposes for which Cognism intended to use the data pursuant to the General Data Protection Regulation ("GDPR").

42.    Both times, Mr. Kis was given the opportunity to "opt out" and have his information removed, and neither time did he make such an election.

43.    The only way Mr. Kis' information could possibly appear to any user of Cognism's platform would be when the platform itself was actually used.

44.    A Cognism user could conduct a search for Mr. Kis specifically by his name, or the user could conduct a search with certain search criteria that would then list Mr. Kis if he fit that criteria.

45.    Mr. Kis' name and information were never listed on Cognism's public-facing website, www.cognism.com, and never used in any promotional material or advertisement.

46.    Cognism maintains records that allow it to see if an individual's information has been accessed, and how many times.

DECLARATION OF JAMES ISILAY
CASE NO.: 4:22-CV-05322-JST

47.     Following the filing of this action, Cognism checked to see the frequency of access to information regarding Mr. Kis.

48.     Mr. Kis has been listed only once in response to a customer inquiry.  That "customer" was Benjamin Osborn, one of Mr. Kis' attorneys in this case.  No other user of Cognism's platform has ever viewed Plaintiff's information and no user has ever paid for doing so.

49.     Mr. Osborn gained access to Cognism's platform by representing to a Cognism sales representative that he often had "case ideas" where he thought someone violated the law, but needed a tool to help him "come up with people who'd bring suit" who, for example, worked for a particular employer or who lived in a particular geography.  Mr. Osborn suggested that Cognism's platform might facilitate that effort.

50.     Based on Mr. Osborn's representations, he was granted access to Cognism's platform from which he then accessed information relating to Mr. Kis.

51.     No information relating to Mr. Kis has ever been accessed from Cognism's platform in response to any search other than the one performed by Mr. Osborn.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in London, United Kingdom, on 12/12/2022.

DocuSigned by:

*James Isilay*

21F9F3A1F8A54D6...

JAMES ISILAY
CHIEF EXECUTIVE OFFICER