Michael S. Sommer (admitted *pro hac vice*)
JaeYoung Ariel Jeong (admitted *pro hac vice*)
Derek K. Mong (admitted *pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
Telephone: (212) 999-5800
Facsimile:  (212) 999-5899
Email:        msommer@wsgr.com
                   ajeong@wsgr.com
                   dmong@wsgr.com

Colleen Bal, State Bar No. 167637
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
One Market Plaza Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (415) 947-2000
Facsimile:  (415) 947-2099
Email:        cbal@wsgr.com

*Attorneys for Defendant Cognism Inc.*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS KIS, on behalf of himself and all others similarly situated, | CASE NO.: 4:22-cv-05322-JST |
| Plaintiff, | **DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FRCP 12** |
| v. | |
| COGNISM INC., | **Date:** Thursday, March 16, 2023 |
| Defendant. | **Time:** 2:00 PM Pacific Time |
| | **Courtroom:** Oakland Courthouse, Courtroom 6 – 2nd Floor |
| | Judge Jon S. Tigar |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ........................................................................................................................ 3

I.      PLAINTIFF LACKS ARTICLE III STANDING. ................................................. 3

II.    PLAINTIFF HAS NOT ADEQUATELY ALLEGED A STATUTORY RIGHT-OF-PUBLICITY CLAIM OR A COMMON LAW MISAPPROPRIATION CLAIM. ........................................................................................................... 7

III.    PLAINTIFF FAILS TO ADEQUATELY ALLEGE A CIPA CLAIM AND HAS ABANDONED HIS SECTION 632 AND 637 THEORIES. ........................................... 13

IV.    PLAINTIFF DOES NOT ADEQUATELY ALLEGE A UCL VIOLATION. .................. 15

CONCLUSION .................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Arroyo v. AJU Hotel Silicon Valley LLC,*
    No. 20-CV-08218-JSW,
    2021 WL 2350813 (N.D. Cal. Mar. 16, 2021) ............................................................... 15

*Batis v. Dun & Bradstreet Holdings,*
    No. 22-cv-01924-MMC,
    2023 U.S. Dist. LEXIS 22596 (N.D. Cal. Feb. 9, 2023)...................................................... 8

*Bonilla v. Ancestry.com Operations Inc.,*
    574 F. Supp. 3d 582 (N.D. Ill. 2021) .............................................................................. 7

*Boshears v. PeopleConnect, Inc.,*
    No. C21-1222 MJP,
    2022 WL 888300 (W.D. Wash. Mar. 25, 2022),
    *appeal filed*, No. 22-35262 (9th Cir. Mar. 28, 2022) ........................................................ 8

*Brooks v. Thomson Reuters Corp.,*
    No. 21-CV-01418-EMC,
    2021 WL 3621837 (N.D. Cal. Aug. 16, 2021)......................................................... 2, 10, 13

*Callahan v. Ancestry.com Inc.* ("*Ancestry I*"),
    No. 20-CV-08437-LB,
    2021 WL 783524 (N.D. Cal. Mar. 1, 2021) .......................................................................... 4

*Callahan v. Ancestry.com Inc.* ("*Ancestry II*"),
    No. 20-CV-08437-LB,
    2021 WL 2433893 (N.D. Cal. June 15, 2021) ..................................................................... 6

*Callahan v. PeopleConnect, Inc.,*
    No. 20-CV-09203-EMC,
    2021 WL 5050079 (N.D. Cal. Nov. 1, 2021),
    *motion to certify appeal denied*,
    No. 20-CV-09203-EMC,
    2022 WL 2132912 (N.D. Cal. June 14, 2022) ..................................................................... 8

*Camacho v. Control Grp. Media Co.,*
    No. 21-CV-1954-MMA (MDD),
    2022 WL 3093306 (S.D. Cal. July 18, 2022),
    *appeal filed*, No. 22-55735 (9th Cir. Aug. 3, 2022)................................................. 7, 10, 13

*Doak v. Cap. One, N.A.,*
    No. 5:18-CV-07102-EJD,
    2019 WL 4645162 (N.D. Cal. Sept. 24, 2019).................................................................... 6

*Fischer v. Instant Checkmate LLC,*
    No. 19 C 4892,
    2022 WL 971479 (N. D. Ill. Mar. 31, 2022) ..................................................................... 12

*Gabiola v. Sarid*,
No. 16-CV-02076,
2017 WL 4264000 (N.D. Ill. Sept. 26, 2017) .................................................................. 7

*Huston v. Hearst Commc'ns, Inc.*,
No. 21-CV-1196,
2022 WL 385176 (C.D. Ill. Feb. 7, 2022),
*aff'd*, 53 F.4th 1097 (7th Cir. 2022) ................................................................ 1, 10, 12

*In re Facebook Consumer Privacy User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ...................................................................... 3, 4

*In re Facebook, Inc. Internet Tracking Litig.* ("*Facebook Tracking*"),
956 F.3d 589 (9th Cir. 2020),
*cert denied sub nom. Facebook, Inc. v. Davis*,
141 S. Ct. 1684 (2021) ............................................................................................... 4, 5

*In re iPhone Application Litig.*,
No. 11-MD-02250-LHK,
2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ............................................................. 15

*J.R. v. Walgreens Boots All., Inc.*,
470 F. Supp. 3d 534 (D.S.C. 2020),
*aff'd*, No. 20-1767, 2021 WL 4859603 (4th Cir. Oct. 19, 2021) ................................. 12

*Kellman v. Spokeo, Inc.*,
599 F. Supp. 3d 877 (N.D. Cal. 2022),
*motion to certify appeal denied*,
No. 3:21-CV-08976-WHO,
2022 WL 2965399 (N.D. Cal. July 8, 2022) ............................................................. 9, 10

*Knapke v. PeopleConnect Inc.*,
553 F. Supp. 3d 865 (W.D. Wash. 2021),
*vacated and remanded*, 38 F.4th 824 (9th Cir. 2022) ............................................. 8, 12

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005) ..................................................................................... 14

*Kolebuck-Utz v. Whitepages Inc.*,
No. C21-0053-JCC,
2021 WL 1575219 (W.D. Wash. Apr. 22, 2021) ............................................................ 9

*Krause v. RocketReach, LLC*,
561 F. Supp. 3d 778 (N.D. Ill. 2021) ............................................................................ 8

*Low v. LinkedIn Corp.*,
No. 11-CV-01468-LHK,
2011 WL 5509848 (N.D. Cal. Nov. 11, 2011) ................................................................ 4

*Lukis v. Whitepages Inc.*,
542 F. Supp. 3d 831 (N.D. Ill. 2020) ...................................................................... 9, 11

*Martinez v. ZoomInfo Techs. Inc.*,
No. C21-5725 MJP,
2022 WL 1078630 (W.D. Wash. Apr. 11, 2022) ................................................. 3, 8, 9, 10

*Safe Air for Everyone v. Meyer*,
      373 F.3d 1035 (9th Cir. 2004) .......................................................................................... 3

*Sessa v. Ancestry.com Operations Inc.*,
      561 F. Supp. 3d 1008 (D. Nev. 2021),
      *appeal dismissed*,
      No. 21-16618,
      2022 WL 4598091 (9th Cir. Apr. 14, 2022) ..................................................................... 11

*Siegel v. Zoominfo Techs., LLC*,
      No. 21 C 2032,
      2021 WL 4306148 (N.D. Ill. Sept. 22, 2021) ......................................................... 9, 11, 12

*Spindler v. Seamless Contacts Inc*,
      No. 22-cv-00787,
      2022 WL 16985678 (N.D. Cal. Oct. 24, 2022) ..................................................... 3, 8, 11

*Spokeo Inc. v. Robins*,
      578 U.S. 330, *as revised* (May 24, 2016) ........................................................................ 5

*Tabak v. Apple, Inc.*,
      No. 19-CV-02455-JST,
      2020 WL 9066153 (N.D. Cal. Jan. 30, 2020) ............................................................ 14, 15

*Threshold Enterprises Ltd. v. Pressed Juicery, Inc.*,
      445 F. Supp. 3d 139 (N.D. Cal. 2020) ............................................................................ 15

*TransUnion LLC v. Ramirez*,
      141 S. Ct. 2190 (2021) ................................................................................................... 5, 6

*Wilson v. Ancestry.com LLC*,
      No. 22-cv-861,
      2023 WL 1112265 (S.D. Ohio Jan. 31, 2023) ................................................................. 7

**RULES**

Fed. R. Evid. 201(b) ............................................................................................................... 15

**OTHER AUTHORITIES**

J. Thomas McCarthy & Roger E. Schechter,
      1 Rights of Publicity and Privacy § 5:19 (2d ed. May 2022 Update) ....................... 10

1

**INTRODUCTION[1]**

2      Contrary to what Plaintiff would have this Court believe, this case is not about the entire

3  industry of B2B prospect tracking and the sale of mailing lists—a well-established, standard

4  practice in the direct mail industry.  *See Huston v. Hearst Commc'ns, Inc.*, No. 21-CV-1196,

5  2022 WL 385176, at *3 (C.D. Ill. Feb. 7, 2022) ("The purchase of mailing lists of subscribers

6  has been a standard practice in the direct mail industry."), *aff'd*, 53 F.4th 1097 (7th Cir. 2022).

7  Rather, this is a case about whether Cognism unlawfully misappropriated Plaintiff's identity to

8  advertise and promote its platform, and whether Defendant unlawfully intercepted the

9  confidential contents of Plaintiff's email communications.  It is also about whether Plaintiff has

10  adequately alleged that he has suffered any concrete injury fairly traceable to that alleged

11  conduct.  Each of these questions should be answered in the negative.

12      Plaintiff's opposition attempts to obfuscate these issues by engaging in scare tactics and

13  fear mongering about a litany of wholly irrelevant matters not at issue in this case, including, for

14  example, what unnamed Californians believe about the purported secrecy of their internet

15  browsing history and reading habits.  Plaintiff's distractions, however, do not save the

16  deficiencies in his complaint:  he has not adequately alleged an injury-in-fact sufficient to confer

17  standing, nor has he adequately alleged any of his claims.

18      As an initial matter, Plaintiff has not adequately alleged any coherent theory about how

19  he has been injured by the challenged conduct—nor could he, because Cognism never displayed

20  his information on its platform as part of any advertisement or solicitation, nor did Cognism ever

21  intercept or read any of his email communications.  He thus lacks standing to pursue his claims.

22  Moreover, Plaintiff's claims remain deficient as a matter of law.  *First*, Plaintiff's right-of-

23  publicity and misappropriation claims fail because he has not alleged that Cognism appropriated

24  his identity to advertise a separate product.  Instead, Plaintiff fixates on a series of cases where

25  courts have found potential right-of-publicity violations where a defendant company used a

26

---

27      [1] Citations to "Mot." are to Defendant's Motion to Dismiss Pursuant to FRCP 12 (ECF
No. 24) (the "Motion").  Defined terms used herein have the same meaning as in Defendant's
28  Motion.  Citations to "Opp." are to Plaintiff's Opposition to Defendant's Motion to Dismiss
(ECF No. 41).

1   "teaser profile" to advertise its product or service—a business practice in which Cognism has

2   never engaged.  Plaintiff's opposition glosses over this critical difference because it cannot avoid

3   the impact of the numerous decisions concluding that the use of someone's name in an

4   advertisement must be distinct from the name appearing in the product itself.  *See, e.g., Brooks v.*

5   *Thomson Reuters Corp.*, No. 21-CV-01418-EMC, 2021 WL 3621837, at *4 (N.D. Cal. Aug. 16,

6   2021) (finding it persuasive that "this is not a right of publicity case because Thomson Reuters is

7   not using Plaintiffs' name or likeness 'for promotional purposes,' ***i.e., to advertise or promote a***

8   ***separate product or service***") (emphasis added); *see infra* p. 10.  Plaintiff's transparent attempt

9   to shoehorn Cognism's business practices into a factually and doctrinally distinct line of cases

10  should therefore be rejected.

11          *Second*, Plaintiff's CIPA claim fares no better.  Tellingly, Plaintiff has now abandoned

12  his CIPA Section 632 and 637 claims entirely (for eavesdropping on or recording confidential

13  communications, and the disclosure of telegraphic or telephonic messages respectively).  The

14  only remaining CIPA claim is a purported violation of Section 631 for wiretapping.  But even as

15  to this now streamlined claim, Plaintiff fails to engage on the substance of Defendant's motion

16  altogether—instead arguing that the Court should not consider Defendant's arguments as they

17  are purportedly based solely on extrinsic evidence.  But this is wrong.  The Court need not

18  consider extrinsic evidence to dismiss the CIPA claim, as Plaintiff has failed to allege facts to

19  support such a claim, as explained in Defendant's opening brief.  Moreover, as Cognism has

20  raised the issue of the Court's subject matter jurisdiction, the Court is entitled to consider

21  extrinsic evidence, which Plaintiff appears to concede.

22          *Third*, Plaintiff lacks statutory standing to assert his UCL claim because he has not

23  suffered the loss of any money or property.  Apparently conceding that he has not lost any

24  money as a result of the alleged conduct (because he has not), Plaintiff now limits his theory of

25  ***property loss*** to the supposed loss of his intellectual property.  But courts have recognized that

26  this type of purported "loss" does not constitute the loss of property under the UCL.

27  Accordingly, and as further explained below, the complaint should be dismissed in its entirety.

28

1

**ARGUMENT**

2

**I.      PLAINTIFF LACKS ARTICLE III STANDING.**

3

Plaintiff fails to identify a legally cognizable injury-in-fact that is fairly traceable to

4

Cognism and thus, he lacks Article III standing to assert any of his claims.[2]

5

*First*, Plaintiff does not contest the legal standard for a Rule 12(b)(1) motion to dismiss

6

for lack of standing articulated by Defendant.  That legal standard provides that the allegations in

7

the complaint are not entitled to a presumption of truth where a defendant has asserted a factual

8

challenge to subject matter jurisdiction.  *See* Mot. at 7; *Safe Air for Everyone v. Meyer*, 373 F.3d

9

1035, 1039 (9th Cir. 2004) ("In resolving a factual attack on jurisdiction, the district court may

10

review evidence beyond the complaint . . . [and] need not presume the truthfulness of the

11

plaintiff's allegations.") (citations omitted).  Accordingly, the Court can and should consider

12

extrinsic evidence, including the declarations provided by Cognism's CEO James Isilay, as well

13

as other material incorporated by reference in the Complaint and Cognism's public website, of

14

which the Court may take judicial notice.

15

*Second,* none of Plaintiff's "injuries" are legally cognizable as a matter of law.  Plaintiff

16

asserts that he has suffered some unspecified economic injury from Cognism's alleged

17

exploitation and "profiting from" his persona (*see* Opp. 12-14), but these conclusory allegations

18

are legally insufficient, as made clear by the Court in *In re Facebook Consumer Privacy User*

19

*Profile Litig.,* 402 F. Supp. 3d 767, 784 (N.D. Cal. 2019).  While Plaintiff seeks to avoid the

20

reasoning of that decision by arguing that it did not concern right-of-publicity claims (Opp. at

21

13), the plaintiffs there similarly alleged (without success) that "they were deprived the

22

economic value of their personal information as a result of its dissemination, the theory

23

apparently being that if their information had remained private, they could have sold that

24

25

[2] In a case raising a standing challenge in the context of a right of publicity claim, *Martinez v.*

26

*ZoomInfo Techs. Inc.*, No. 21-cv-05725-MJP (W.D. Wash. filed Sept. 30, 2021), the Ninth
Circuit has scheduled argument in April 2023.  No. 22-35305 (9th Cir. filed Apr. 15, 2022).  In

27

another case, also raising a challenge to standing for a right of publicity claim, *Spindler v.*
*Seamless Contacts Inc.*, No. 22-cv-787, (N.D. Cal.), the appeal has been stayed pending

28

resolution of the appeal in *Martinez v. ZoomInfo*.  Order, *Spindler v. Seamless Contacts Inc.*,
No. 22-16772 (9th Cir. Jan. 10, 2023), ECF No. 10.

1    information to advertisers or data brokers themselves."  402 F. Supp. 3d at 784.  Here, just as in

2    *Facebook Consumer Privacy,* Plaintiff does "not plausibly allege that [he] intended to sell [his]

3    non-disclosed personal information to someone else" or "that someone else would have bought it

4    as a stand-alone product."  *Id.*  Plaintiff's "economic-loss theory is therefore purely hypothetical

5    and does not give rise to standing."  *Id.*; *see also Callahan v. Ancestry.com Inc.* ("*Ancestry I*"),

6    No. 20-CV-08437-LB, 2021 WL 783524, at *5 (N.D. Cal. Mar. 1, 2021) ("plaintiffs do not have

7    a commercial interest in their public profiles that precludes [] use of the profiles for commercial

8    gain"); *Low v. LinkedIn Corp.*, No. 11-CV-01468-LHK, 2011 WL 5509848, at *3 (N.D. Cal.

9    Nov. 11, 2011) (dismissing complaint on standing grounds where "Plaintiff has not alleged that

10   his [personal information] . . . was actually . . . transmitted to any third parties"; "Plaintiff was

11   unable to articulate a theory of what information had actually been transmitted to third parties,

12   how it had been transferred to third parties, and how LinkedIn had actually caused him harm.").

13        Plaintiff's reliance on another "Facebook" decision, *In re Facebook, Inc. Internet*

14   *Tracking Litig.* ("*Facebook Tracking*"), 956 F.3d 589 (9th Cir. 2020), *cert denied sub nom.*

15   *Facebook, Inc. v. Davis*, 141 S. Ct. 1684 (2021), as a basis for finding injury is similarly

16   misplaced.  Opp. at 13-14.  Contrary to Plaintiff's assertion that he is entitled to point to

17   Defendant's profits to establish injury, *Facebook Tracking* recognizes that plaintiffs must allege

18   facts to show how one was concretely harmed by the challenged practice to confer standing.

19   There, the plaintiffs specifically alleged that their internet browsing histories had quantifiable

20   independent financial value, highlighting a "study that values users' browsing histories at $52

21   per year."  *Facebook Tracking*, 956 F.3d. at 600.  Plaintiffs in that case also pointed to "research

22   panels that pay participants for access to their browsing histories."  *Id.*  Here, the Complaint is

23   utterly devoid of any specific factual allegations that Plaintiff's information has independent

24   economic value that was purportedly exploited by Cognism—nor could Plaintiff so allege,

25   because no Cognism customer (other than Plaintiff's own lawyer) has ever searched for, been

26   shown, or been provided with any information about Plaintiff.  As a result, Cognism has not

27   earned one penny from any use of Plaintiff's name or information.

28

Plaintiff's conclusory allegation that there was a statutory violation here is also insufficient to confer standing, as a concrete injury-in-fact must be alleged.  *See* Mot. at 11-12.  Plaintiff again cites to *Facebook Tracking* for the proposition that a plausible allegation of a **CIPA violation** can alone confer standing for such a claim.  *See* Opp. at 17-18.  As an initial matter, by limiting his argument to his CIPA claim, Plaintiff concedes that his right-of-publicity and misappropriation claims must contain allegations of a concrete injury-in-fact, which are absent here.  *See* Mot. at 8-14.  Moreover, *Facebook Tracking* is not helpful to Plaintiff in connection with his CIPA claim because he has ***not*** plausibly alleged any CIPA violation; instead, he has abandoned most of his CIPA theories altogether (*see* Opp. at 21-22), and he fails to allege that there was any contemporaneous interception of the contents of a confidential communication while in transit, because there plainly was not.[3]  *See infra* Section III.

Plaintiff criticizes Cognism for not citing the Supreme Court's decision in *TransUnion LLC v. Ramirez,* 141 S. Ct. 2190 (2021) (*see* Opp. at 10), but the *TransUnion* decision merely clarified the standing analysis articulated under *Spokeo Inc. v. Robins*, 578 U.S. 330, *as revised* (May 24, 2016).  The Supreme Court in *TransUnion* articulated the importance of considering "injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts" together with Congressional direction in evaluating whether there is an injury-in-fact.  141 S. Ct. at 2204.  Critically, despite the directive to consider such "traditional injuries" and Congressional direction, the Court underscored what it had already articulated in *Spokeo*: "under Article III, an injury in law is not an injury in fact" and thus "[o]nly those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue

---

[3] Plaintiff also cites *Facebook Tracking* for the additional proposition that collecting internet browsing history ("intent data") may violate CIPA.  *See* Opp. at 3-4.  But this is certainly a red-herring as Plaintiff has not pled any such theory in his Complaint.  *See* Compl. ¶¶ 110-113, 115-116 (Plaintiff's CIPA allegations relate exclusively to email communications).  Moreover, Cognism does not track or monitor a user's website behavior, other than standard "cookies" used to track a Cognism user's behavior while navigating the Cognism website.  *See* Suppl. Decl. ¶ 5.  Instead, Cognism purchases data from a third-party vendor that contains anonymized and not individualized browsing information. Suppl. Decl. ¶ 6.  Plaintiff's argument that "Cognism ***could*** be tracking and reporting on every article you read online . . . and you would never know it" (Opp. at 3) (emphasis added), is therefore nothing other than unsupported and erroneous speculation that is completely divorced from any claim in the Complaint.  Either way, Plaintiff's argument fails to establish that Plaintiff suffered a concrete injury here.

that private defendant over that violation in federal court." *Id.* at 2205.  Here, there is no

concrete injury-in-fact (*see* Mot. at 8-14), and the supposed common law analogues are

inapposite as the alleged injuries do not relate to any "traditional injuries" at common law.  As

the *Ancestry II* Court explained, "the rights protected by [the CRPL] are not analogous to the

fundamental and historical privacy rights in the California Invasion of Privacy Act, the Wiretap

Act, and the Stored Communications Act."  *Callahan v. Ancestry.com Inc.* ("*Ancestry II*"),

No. 20-CV-08437-LB, 2021 WL 2433893, at *4 (N.D. Cal. June 15, 2021).

The other purported "injuries" offered up by Plaintiff can be readily disposed of.  No

intellectual property right is implicated by the use of an identity where there is no plausible

allegation that the identity has independent economic value.  *See id.* at *5; *see also* Mot. at 11.

"Harm to peace of mind" is not a legally cognizable injury-in-fact.  *See Doak v. Cap. One, N.A.*,

No. 5:18-CV-07102-EJD, 2019 WL 4645162, at *4- 6 (N.D. Cal. Sept. 24, 2019) (dismissing

complaint for lack of standing where plaintiff alleged "mental anguish" and "emotional distress"

as a result of defendant improperly accessing the plaintiff's consumer credit report); *see also*

Mot. at 13-14.  And the purported increased risk of identity theft injury that Plaintiff raised in his

Complaint has now been abandoned.

*Third*, notwithstanding the fact that Plaintiff's purported "injuries" are not legally

cognizable as a matter of law, he also has offered no coherent factual allegations about how he

has purportedly been injured, as he must.  *See* Mot. at 9-10.  Plaintiff does not dispute that

nobody other than his own lawyer viewed his profile.  *See* Decl. ¶ 51.  Moreover, his assertion

that he has been injured is belied by his own conduct.  Plaintiff says he "does not want his name

and likeness to be used to promote Cognism's [] product" (Opp. at 4), but he offers no

explanation for why he did not opt-out when he was notified—*twice*—by Cognism that he could

have his information removed from Cognism's database. *See* Decl. ¶¶ 40-42.

Based on the above, Plaintiff lacks standing to pursue any of his claims.[4]

---

[4] Plaintiff's repeated reference to a product offered by a company named "Kaspr" cannot
rescue him from the conclusion that he has suffered no concrete harm from the conduct of
Cognism.  Kaspr is not owned or operated by Defendant.  It is a separate French company with
its own operations.  The Kaspr plug-in is not a product offered by Defendant.  Users of Kaspr

(continued...)

## II.     PLAINTIFF HAS NOT ADEQUATELY ALLEGED A STATUTORY RIGHT-OF-PUBLICITY CLAIM OR A COMMON LAW MISAPPROPRIATION CLAIM.

Plaintiff's right-of-publicity and common law misappropriation claims should be dismissed for two independent reasons.  *First*, Plaintiff has not adequately alleged that Cognism appropriated Plaintiff's identity.  Clearly missing from the Complaint is any allegation that Cognism advertises or promotes its product using "teaser" profiles in the same manner as many of its competitors do.  Because some courts have found that such practices may give rise to a right-of-publicity or misappropriation claim, Plaintiff makes the conclusory argument that Cognism's "advertising practices are identical to those of the[se] other defendants" in such cases.  *See* Opp. at 4.  But this is just not so.

The cases on which Plaintiff relies are all easily distinguishable as each involves roughly the same distinct fact pattern:  a public website that allows a user to search for a specific name where certain information about that particular person is held back and offered only with payment, *i.e.*, a teaser profile.[5]  Each of the websites for the defendants in the cases cited by Plaintiff, used some version of a "teaser" profile:

- **Ancestry.**  *See Wilson v. Ancestry.com LLC*, No. 22-cv-861, 2023 WL 1112265, at *1 (S.D. Ohio Jan. 31, 2023) ("[V]ia Ancestry's publicly accessible landing page, any visitor may search for any person by name and location. . . . Upon returning a search . . . , Ancestry retrieves a list of corresponding [] photographs accompanied by promotional text urging the visitor to 'Sign Up Now'"); *Bonilla v. Ancestry.com Operations Inc.*, 574 F. Supp. 3d 582, 588 (N.D. Ill. 2021) ("promotional messages contain 'hints' corresponding to yearbook records Ancestry believes may be related to the potential customer").

- **Control Group Media.**  *See Camacho v. Control Grp. Media Co.*, No. 21-CV-1954-MMA (MDD), 2022 WL 3093306, at *2 (S.D. Cal. July 18, 2022) ("When consumers perform a free search for an individual—by typing the individual's first and last name into a search bar—Defendants display webpages featuring the

---

cannot access the Cognism platform, and users of the Cognism platform do not have access to Kaspr.  Accordingly, Plaintiff's allegations and arguments about Kaspr are utterly irrelevant to Cognism's instant motion.  Suppl. Decl. ¶ 2-4.

[5] One of the cases relied upon by Plaintiff implicates a different business model where a defendant directly solicited payments to remove mugshots from a public website.  Nonetheless, in that case, a person's identity was publicly held out and was being used to solicit payment for a service; thus, it is readily distinguishable from Cognism's alleged conduct where no names are presented on its public website.  *See Gabiola v. Sarid*, No. 16-CV-02076, 2017 WL 4264000, at *2 (N.D. Ill. Sept. 26, 2017) ("In 2008, [defendant] created [], a searchable online database of arrest record information complete with photographs ('mugshots') when they are available. . . . [defendant also] offers a service to remove the records only . . . for a fee.").

searched individual's full name alongside certain uniquely identifying information, including age, location, and names of relatives. . . . [O]nce a consumer selects an individual . . . from the Instant Checkmate Marketing Page, Instant Checkmate displays a checkout page with two offers to purchase a subscription to the website"), *appeal filed*, No. 22-55735 (9th Cir. Aug. 3, 2022).

- **Dun and Bradstreet.** *See Batis v. Dun & Bradstreet Holdings*, No. 22-cv-01924-MMC, 2023 U.S. Dist. LEXIS 22596, at *2-3 (N.D. Cal. Feb. 9, 2023) ("Users who attempt to download [the plaintiff's] profile during the free trial or who attempt to view her profile after the free trial 'are informed they must purchase a subscription.'"; Complaint, ¶ 39, *Batis v. Dun & Bradstreet Holdings*, No. 22-cv-01924-MMC (N.D. Cal. Mar. 25, 2022), ECF No. 1, also indicates that "Users who attempt to download . . . personal information by clicking the 'Download' button receive a pop-up message informing them that they must obtain 'Credits' with D&B Hoovers before they can download the information. 'Credits' are not provided to users of the free trial version of the D&B Hoovers website, which Dun & Bradstreet makes available to the public. 'Credits' are available only to paying subscribers. To download . . . personal information, users must purchase a subscription to the D&B Hoovers website.").

- **PeopleConnect.** *See Knapke v. PeopleConnect Inc.*, 553 F. Supp. 3d 865, 871 (W.D. Wash. 2021) ("The search results provide a free preview of the services and products with a photo and name of an individual to entice the user to purchase Classmates' services and products."), *vacated and remanded*, 38 F.4th 824 (9th Cir. 2022); *Callahan v. PeopleConnect, Inc.*, No. 20-CV-09203-EMC, 2021 WL 5050079, at *1 (N.D. Cal. Nov. 1, 2021) ("Users of Classmates.com can type [plaintiff's] name into a search bar. . . . The search results provide a list of sixteen records associated with [the plaintiff's name]. . . . 'When users click to view any of the records corresponding to [the plaintiff], . . . Classmates displays a page showing the photograph of [the plaintiff] and his name, accompanied by a link marked 'Own this yearbook today,' which leads to a page soliciting the purchase of the yearbook for $99.95.'"), *motion to certify appeal denied*, No. 20-CV-09203-EMC, 2022 WL 2132912 (N.D. Cal. June 14, 2022); *Boshears v. PeopleConnect, Inc.*, No. C21-1222 MJP, 2022 WL 888300, at *1 (W.D. Wash. Mar. 25, 2022) ("visitors . . . are presented with a 'banner ad' adjacent to photographs of an individual for whom the user searched that tells the user 'It's time to upgrade!' . . . The 'upgrade' offer is to buy a subscription"), *appeal filed*, No. 22-35262 (9th Cir. Mar. 28, 2022).

- **RocketReach.** *See Krause v. RocketReach, LLC*, 561 F. Supp. 3d 778, 781 (N.D. Ill. 2021) ("[D]efendant allegedly encourages prospective customers to perform free 'people searches' on its website by typing in a searched individual's first and last name. The result of such a search is a preview page featuring the searched individual's full name along with certain uniquely identifying information, including location, work history, and education.").

- **Seamless.** *See Spindler v. Seamless Contacts Inc,*, No. 22-cv-00787, 2022 WL 16985678 (N.D. Cal. Oct. 24, 2022); Complaint, ¶ 10, *Spindler v. Seamless Contacts Inc,*, No. 22-cv-00787-KAW (N.D. Cal. Feb. 27, 2022), ECF No. 1 shows that certain additional information and services are locked from within the free trial), *appeal filed*, No. 22-16772 (9th Cir. Nov. 16, 2022).[6]

---

[6] As noted *supra* footnote 2, an appeal is pending in *Spindler*, which has been stayed until the appeal in *Martinez v. ZoomInfo* is resolved.

- **Spokeo.**  *See Kellman v. Spokeo, Inc.*, 599 F. Supp. 3d 877, 884 (N.D. Cal. 2022) ("[Spokeo] runs a website that provides information about particular individuals aggregated from various sources.  To advertise paid subscriptions to the site, Spokeo uses 'teasers'—profiles of real people with some information redacted.  The plaintiffs in this putative class action claim that, when Spokeo used teasers of them, it violated their rights of publicity and appropriated their names and likenesses in violation of California, Ohio, and Indiana law."), *motion to certify appeal denied*, No. 3:21-CV-08976-WHO, 2022 WL 2965399 (N.D. Cal. July 8, 2022).

- **WhitePages.**  *See Kolebuck-Utz v. Whitepages Inc.*, No. C21-0053-JCC, 2021 WL 1575219, at *1 (W.D. Wash. Apr. 22, 2021) ("To entice users to purchase these products, Defendant allows a user to initially search for a person using that person's name, without charge; the user is then provided a list of possible persons, including identifying information, and given the option of receiving a 'free preview' of Defendant's 'report' on the searched individual."); *Lukis v. Whitepages Inc.*, 542 F. Supp. 3d 831, 835 (N.D. Ill. 2020) ("Anyone can search the Whitepages website for a person's name and gain access to free information connected with that name. . . . A search for Lukis returns her name, age range, phone number, current and previous addresses, and relatives. . . . Whitepages calls this the 'Free Information,' and Lukis calls it the 'Free Preview.'")

- **ZoomInfo.**  *See Siegel v. Zoominfo Techs., LLC*, No. 21 C 2032, 2021 WL 4306148, at *1 (N.D. Ill. Sept. 22, 2021) ("ZoomInfo creates landing pages for each individual found within its database that features the individual's full name, alongside certain uniquely identifying information such as the individual's location and a preview of the individual's email addresses and phone numbers, work information, job title, and a list of colleagues ('Marketing Page'). . . . As part of its marketing strategy, ZoomInfo encourages prospective customers to perform a free search for an individual by typing the individual's first and last name into the search bar. . . . ZoomInfo then displays a 'preview page' featuring some of the information from the Marketing Page, such as partial phone numbers and email addresses."); *Martinez v. ZoomInfo Techs. Inc.*, No. C21-5725 MJP, 2022 WL 1078630, at *1 (W.D. Wash. Apr. 11, 2022) ("She alleges that when a user searches for an individual either on a search engine or ZoomInfo, ZoomInfo displays 'teaser profiles' showing some information about the individual and offering 'full access' in exchange for a fee-based subscription. . . . It is this teaser profile about her that forms the focus of Martinez's claims.")[7], *appeal filed*, 22-35305 (9th Cir. Apr. 15, 2022).

In each of these cases, the teaser profile played a key part in the court's analysis of whether the plaintiff had stated a right-of-publicity claim.  Although Plaintiff asserts that teaser profiles are somehow irrelevant, citing *Kellman* and *Martinez* (*see* Opp. at 9-10), *Kellman* and *Martinez* each confirm that teaser profiles are critical to a finding of potential liability.  For example, the very first paragraph of the decision in *Kellman* recognizes that teaser profiles are the key advertisement at issue:  "To advertise paid subscriptions to the site, Spokeo uses

---

[7] As noted *supra* footnote 2, *Martinez* is currently on appeal to the Ninth Circuit.  ZoomInfo asserts in its appeal that *Martinez* lacks Article III standing to assert his right-of-publicity claim.  The appeal is scheduled to be heard on April 14, 2023.

'teasers'—profiles of real people with some information redacted.  The plaintiffs in this putative class action claim that, when Spokeo used teasers of them, it violated their rights of publicity and appropriated their names and likenesses in violation of California, Ohio, and Indiana law."  599 F. Supp. 3d at 884.  The emphasis on teaser profiles is similarly pronounced in *Martinez*:  "It is this teaser profile about her that forms the focus of Martinez's claims."  2022 WL 1078630, at *1.  It simply strains credulity to assert that teaser profiles are somehow irrelevant where courts recognize that teaser profiles are the "focus" of the right-of-publicity analysis.

Moreover, for all of Plaintiff's reliance on cases involving Illinois claims, a glaring omission in Plaintiff's brief is *Huston*, which was subsequently affirmed by the Seventh Circuit. 53 F.4th 1097 (7th Cir. 2022).  In *Huston*, the district court dismissed an Illinois Right of Publicity Act claim against the defendant for selling a mailing list containing the personal information of subscribers to the defendant's magazines.  2022 WL 385176, at *1-3.  The Court concluded that the plaintiff "fail[ed] to allege that her identity was used in connection with the offer for sale of any product or service to a third party or to advertise any product or service" because the plaintiff's identity ***was the product itself***, and the state right-of-publicity statute only "prohibit[ed] the use of an individual's identity to promote or entice the purchase ***of some other product***."  *Id.* at *2-3 (emphasis added).  Here, because Plaintiff's name in the Cognism platform is the product being sold (and no separate use of his name is being made by Defendant), he does not have a viable right-of-publicity claim.  *See also Brooks*, 2021 WL 3621837, at *4 ("Virtually all right of publicity cases involve the use of a person's name or likeness ***to advertise a separate product or service***.") (citations omitted) (emphasis added); *see also Camacho*, 2022 WL 3093306, at *25 ("As to this requirement, '[a] review of the cases finding that commercial speech violates the right of publicity strongly suggests that advertisements are actionable when the plaintiff's identity is used, without consent, ***to promote an unrelated product***.'") (citations and footnote omitted) (collecting cases) (emphasis added); J. Thomas McCarthy & Roger E. Schechter, 1 Rights of Publicity and Privacy § 5:19 (2d ed. May 2022 Update) (explaining the fundamental premise of a right of publicity claim is that a person's identity must be used "to draw attention to a product or advertisement").

Against this doctrinal backdrop, it is clear that Plaintiff has no valid claim against Cognism.  The Cognism platform does not have teaser profiles or landing pages—which courts in analogous cases have considered to be the relevant advertisement that gave rise to the right-of-publicity or misappropriation claim.  Cognism does not hold back information to lure one to want to get more information.  All available information about any individual in the platform can be obtained in full at all times.  Decl. ¶ 21.  Thus, Plaintiff's assertion that Cognism has used Plaintiff's identity in a direct advertisement or solicitation (*see* Opp. at 7) is simply wrong.

Faced with the reality that Cognism does not use teaser profiles, Plaintiff tries to shift the focus to Cognism's free trial offer, claiming that courts have also found that a free trial violates the right of publicity (*see* Opp. at 6, 9-10).  Not so.  Plaintiff does not cite a single case in which a right-of-publicity or misappropriation claim was sustained merely from the offering of a free trial where no accompanying teaser profile was used.[8]  *See Siegel*, 2021 WL 4306148, at *1, 3-4 (ZoomInfo used "*partial* phone numbers and email addresses" in its "free previews") (emphasis added); *see also Sessa v. Ancestry.com Operations Inc.*, 561 F. Supp. 3d 1008, 1030 (D. Nev. 2021) (Ancestry used the plaintiffs' names and images in their trial access, but if a prospective subscriber then tried to click through to get that person's information, they were presented with an advertisement to purchase a subscription), *appeal dismissed*, No. 21-16618, 2022 WL 4598091 (9th Cir. Apr. 14, 2022); *Spindler*, 2022 WL 16985678, at *1 (certain additional information and services were locked from within the free trial).[9]

*Second*, Plaintiff has failed to plausibly allege an injury and a direct connection between the alleged appropriation and the claimed injury.[10]  As discussed *supra* in Section I, Plaintiff has

---

[8] Nor would it make sense to sustain a claim for the free use of a platform when it appears undisputed that no claim exists for the paid use of the same platform.

[9] Plaintiff also asserts that *Lukis* involved a free trial (*see* Opp. at 6), but it did not.  *Lukis* only has a "free preview" teaser that proceeded directly to a payment solicitation; there was no free trial intermediate step.  *See Lukis*, 542 F. Supp. 3d at 836 ("Whitepages promotes the sale of background reports by inviting users to purchase them when they are viewing a free preview.")

[10] In his opposition, Plaintiff fails to provide the elements of a right-of-publicity claim and instead focuses on optics and soundbites.  Even more alarming, Plaintiff selectively misstates what is required by omitting that he needs to have alleged an injury to have a viable claim.  *See, e.g.*, Opp. at 8 (incorrectly stating that "[a]ll that is required is that Cognism uses Plaintiff's information in an advertisement without his permission.").

failed to allege a plausible injury because, among other reasons, he does not dispute that no

person other than his own attorney has ever viewed his profile.[11]  Faced with this reality, Plaintiff

instead bewilderingly asserts that there is no publicity requirement for a right-of-publicity claim.

*See, e.g.*, Opp. at 8 ("Neither [claim] requires that the advertisement be 'public-facing' . . . .").

But Courts have consistently held that publicity is an inherent part of a right-of-publicity claim:

"[P]ublicity . . . is still a fundamental requirement of the cause of action of wrongful

appropriation of personality. . . . As such, infringement on the right of publicity and wrongful

appropriation of personality are one in the same, meaning publicity is required in a wrongful

appropriation of personality claim." *J.R. v. Walgreens Boots All., Inc.*, 470 F. Supp. 3d 534, 551

(D.S.C. 2020), *aff'd*, No. 20-1767, 2021 WL 4859603 (4th Cir. Oct. 19, 2021) (South Carolina

law) (footnote omitted); *see also Huston*, 53 F.4th at 1101 ("statute prohibits *the use or holding

out of a person's identifying information* to offer to sell or sell a product, piece of merchandise,

good, or service") (emphasis added).  This makes perfect sense because there can be no

conceivable resulting injury—an element of both right-of-publicity and misappropriation

claims—where there is no allegation that anybody has ever viewed the Plaintiff's identity.

    The cases on which Plaintiff relies relating to public viewership are inapposite.  None

involve challenges for failure to adequately plead injury, and none even involve California

claims.  *See Knapke*, 553 F. Supp. 3d at 871-72 (12(b)(6) motion on Ohio claims); *Fischer v.

Instant Checkmate LLC*, No. 19 C 4892, 2022 WL 971479, at *11 (N. D. Ill. Mar. 31, 2022)

(motion for class certification on Illinois claims).  Indeed, one of the cases on which Plaintiff

relies even recognizes that "[i]t may very well turn out that Plaintiff is unable to prove the

'holding out' aspect of 'commercial purpose'"—explicitly recognizing that some public "holding

out" is necessary to state a right-of-publicity claim.  *Siegel*, 2021 WL 4306148, at *3-4.

---

[11] Plaintiff claims that his counsel, Benjamin Osborn, did not misrepresent himself to Cognism.
*See* Opp. at 7, n.2.  Aside from the obvious misrepresentation that Attorney Osborn had no
intention of subscribing to Cognism but rather intended to gather information to use in a lawsuit
against it, Attorney Osborn also agreed to the Cognism Terms and Conditions to participate in
Cognism's free trial, which required him to agree to certain limitations on the use of Cognism's
data.  This included a representation that he would not "reproduce, duplicate, copy, sell, or resell
any of the data made available to [him]," which he obviously violated by taking screenshots of
the Cognism platform and filing them publicly.  Cognism, Terms and Conditions (updated Dec.
10, 2018), https://www.cognism.com/terms-and-conditions; *see also* Compl. ¶¶ 61, 62.

Plaintiff also quibbles about the relevance of whether a name appears within the Cognism platform or outside of it, but this argument is simply a variation of the same public viewership issue. *See* Opp. at 7-8. Of course, whether a person's identity is publicly viewable—*i.e.*, whether it appears outside the platform—is key to a right-of-***publicity*** claim. Similarly, using a person's name as part of the product itself does not give rise to such a claim. The identity must be used to promote a separate product; it cannot be the product itself. *Brooks*, 2021 WL 3621837, at *4 ("this is not a right of publicity case because [the defendant] is not using Plaintiffs' name or likeness 'for promotional purposes,' *i.e.*, to advertise or promote a separate product or service."); *id.* at *5 ("The use of a person's name and likeness to promote a product (other than that which pertains to the person themselves) is the essence of an 'appropriation' of one's name or likeness.")[12]; *Camacho*, 2022 WL 3093306, at *25 ("As to this requirement, '[a] review of the cases finding that commercial speech violates the right of publicity strongly suggests that advertisements are actionable when the plaintiff's identity is used, without consent, to promote an *unrelated* product.'") (footnote omitted) (collecting cases). Plaintiff's right-of-publicity and misappropriation claims should therefore be dismissed.

## III.   PLAINTIFF FAILS TO ADEQUATELY ALLEGE A CIPA CLAIM AND HAS ABANDONED HIS SECTION 632 AND 637 THEORIES.

While Plaintiff originally had claimed violations of each of Section 631, 632, and 637 of CIPA, in response to Defendant's motion, Plaintiff has now abandoned his Section 632 and 637 claims. *See* Opp. at 21 (now claiming only that Cognism violated Section 631).

On Plaintiff's one remaining theory of liability under CIPA Section 631, Plaintiff's only response is that the Court should not consider extrinsic evidence. *See* Opp. at 4, 22. This fails

---

[12] On the "separate product" requirement, Plaintiff attempts to distinguish *Brooks*—where the court dismissed right-of-publicity claims for the sale of background reports where teaser profiles were not used. *See* Opp. at 20-21 ("In *Brooks*, by contrast, the defendant displayed profiles 'only to . . . subscribers who deliberately paid [the defendant] to receive the information.'"). *Brooks* is instructive because it involved a service akin to Cognism's where information about specific individuals was not available through a public search but was only accessible to customers. *Brooks*, 2021 WL 3621837, at *5. As in *Brooks*, Cognism does not provide any information prior to an individual becoming a Cognism user by signing as a Cognism user. There thus was no teaser in *Brooks* (like here) that could give rise to a right-of-publicity claim. *Id.*

for a myriad of reasons.  *First*, Cognism raised a facial challenge to the CIPA claim based on the Complaint's deficient allegations.  No extrinsic evidence is needed to see that.  *See* Mot. at 21 ("the Complaint does not allege specific facts that Cognism taps or intercepts any communications that are 'in transit'"), *id.* at 22 ("Plaintiff does not adequately allege that Cognism collects or uses the substantive contents of any email communication").  Plaintiff does not address this pleading deficiency at all.  Similarly, Plaintiff offers no response to Cognism's argument that Plaintiff's CIPA claim fails as a matter of law because he does not allege that the substantive content of his communications was intercepted while in transit.  *See* Mot. at 20-23.

*Second*, Plaintiff's arguments about extrinsic evidence are wrong.  The Court is in fact entitled to consider extrinsic evidence in evaluating the sufficiency of Plaintiff's CIPA claim under both the incorporation-by-reference doctrine as well as by judicial notice.  Plaintiff asserts that the Court may not consider the fact that Cognism is only able to access emails after receipt, not while in transit, and that Cognism only views signature blocks, not the contents of any communications.  *See* Opp. at 22.  But these facts are readily discernable from the Cognism Signature Terms and Conditions publicly available on Cognism's website, which grant permission for Cognism to "access the staff's email ***inbox content***, specifically the information in ***email signatures*** of ***received*** emails."  *See* Decl. ¶ 12 (emphases added).

The Court may take judicial notice of the Cognism Signature Terms and Conditions webpage pursuant to the incorporation-by-reference doctrine, because the Complaint itself relies upon the Cognism website.  *See, e.g.*, Compl. ¶¶ 4, 5, 7, 17, 18; *see also Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) ("We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint. . . . The rationale of the 'incorporation by reference' doctrine applies with equal force to internet pages as it does to printed material.") (citations omitted); *Tabak v. Apple, Inc.*, No. 19-CV-02455-JST, 2020 WL 9066153, at *2 n.2 (N.D. Cal. Jan. 30, 2020) (Tigar, J.) (taking

judicial notice of documents that were available on website where the complaint referred to the contents of the documents).

The Court may also take judicial notice of the Cognism Signature Terms and Conditions webpage under Federal Rule of Evidence 201. *See Arroyo v. AJU Hotel Silicon Valley LLC*, No. 20-CV-08218-JSW, 2021 WL 2350813, at \*2 (N.D. Cal. Mar. 16, 2021) ("Courts may take judicial notice of websites and their contents.") (citation omitted); *Threshold Enterprises Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 146 (N.D. Cal. 2020) ("In general, websites and their contents may be judicially noticed.") (collecting cases) (citations omitted); Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

As such, Plaintiff's sole argument as to the CIPA claim—that extrinsic evidence cannot be considered—is baseless, and Plaintiff's failure to address any of Defendant's arguments warrants that the motion directed to Plaintiff's CIPA claims should be granted.

## IV.   PLAINTIFF DOES NOT ADEQUATELY ALLEGE A UCL VIOLATION.

Finally, Plaintiff has not adequately alleged the loss of money or property to sustain a UCL claim. Plaintiff does not claim that he has lost a penny—nor could he—and now relies solely on a theory of intellectual property loss. *See* Opp. at 23. However, not only has Plaintiff failed to adequately allege *any* injury (*see* Mot. at 8-14, *supra* Section I), but courts have also recognized that the alleged loss of an intellectual property right in one's identity does not constitute the loss of property for purposes of UCL standing. *See* Mot. at 25; *In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2011 WL 4403963, at \*14 (N.D. Cal. Sept. 20, 2011) ("[n]umerous courts have held that a plaintiff's 'personal information' does not constitute money or property under the UCL."). Thus, Plaintiff has not suffered a loss of money or property, and the UCL claim should be dismissed.

### CONCLUSION

For the reasons set forth in its Motion and herein, Defendant Cognism Inc. respectfully requests that the Court grant its Motion.

Respectfully submitted,

Dated: 2/17/2023                          By: /s/ Michael S. Sommer

Michael S. Sommer (admitted *pro hac vice*)
JaeYoung Ariel Jeong (admitted *pro hac vice*)
Derek K. Mong (admitted *pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022
Telephone: (212) 999-5800
Facsimile:  (212) 999-5899
Email: msommer@wsgr.com
           ajeong@wsgr.com
           dmong@wsgr.com

Colleen Bal, State Bar No. 167637
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
One Market Plaza Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (415) 947-2000
Facsimile:  (415) 947-2099
Email: cbal@wsgr.com

*Attorneys for Defendant Cognism Inc.*