— **EXHIBIT A** —

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALICIA NOLEN,<br><br>        Plaintiff,<br><br>    v.<br><br>PEOPLECONNECT, INC.,<br><br>        Defendant. | Case No. 20-cv-09203-EMC<br><br>**ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DISMISS**<br><br>Docket No. 180 |

## I.  INTRODUCTION

Defendant PeopleConnect moves for an order dismissing Plaintiff's claims.[1] Plaintiff filed a class action suit against Defendant for (1) violating California's Right of Publicity Statute, California Civil Code § 3344; (2) violating California's Unfair Competition Law ("UCL"), California Business and Professions Code § 17200 (the unlawful prong); and (3) unjust enrichment under California common law. These claims stem from Defendant's non-consensual use of Plaintiff's likeness for the purpose of advertising. Defendant, however, contends that Plaintiff did not plead an actionable claim because she did not properly allege that Defendant used her image. Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **DENIES** the motion to dismiss.

///

///

---

[1] Defendant also moves to compel former Plaintiff Alexandra Overton to arbitrate her claims. Because Ms. Overton has since voluntarily dismissed her claims, the Court denies Defendant's motion to compel arbitration as moot. *See* Docket No. 183 (notice of voluntary dismissal).

## II.     FACTUAL AND PROCEDURAL BACKGROUND

PeopleConnect is a company that collects yearbooks, scans the yearbooks, and extracts information from the yearbooks (such as names, photographs, schools attended, and so forth) to be put into a database. *See* Docket No. 172 (Second Amended Complaint ("SAC")) ¶ 162.[2] It "aggregates the extracted information into digital records associated with specific individuals," and then the digital records are exploited commercially—to promote and sell PeopleConnect's products—but without the individuals' consent. *Id.* PeopleConnect sells products through its website (Classmates.com). The products sold on the website are (1) reprinted yearbooks and (2) a subscription membership. *Id.* ¶¶ 4, 7.

This motion involves the Second Amended Complaint in this action. Plaintiffs filed their First Amended Complaint ("FAC") after the Court dismissed Plaintiffs' former intrusion upon seclusion claim, UCL (unfair prong) claim, and all claims as they related to the sales of reprinted yearbooks. *See* Docket Nos. 76, 132 (FAC). Plaintiffs, correctly anticipating that their claims were time-barred, filed the SAC to add two new named Plaintiffs: Ms. Alexandra Overton and Ms. Alicia Nolen. Docket No. 177; SAC. Ms. Overton voluntarily dismissed her claims, leaving only Ms. Nolen as named Plaintiff. Docket No. 183.

## III.     LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6). *See* Fed. R. Civ. P. 12(b)(6). To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire &*

---

[2] The Court extensively discussed the factual and procedural history in its previous orders. *See* Docket Nos. 76, 177.

1  *Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But "allegations in a complaint . . . may not
2  simply recite the elements of a cause of action [and] must contain sufficient allegations of
3  underlying facts to give fair notice and to enable the opposing party to defend itself effectively."
4  *Levitt*, 765 F.3d at 1135 (quoting *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d
5  990, 996 (9th Cir. 2014)). "A claim has facial plausibility when the Plaintiff pleads factual
6  content that allows the court to draw the reasonable inference that the Defendant is liable for the
7  misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a
8  'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted
9  unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

## IV. DISCUSSION

To state a misappropriation of likeness claim under the common law, a plaintiff must allege: "(1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury." *Eastwood v. Superior Ct.*, 149 Cal. App. 3d 409, 417, 198 Cal. Rptr. 342, 347 (Ct. App. 1983); *see also Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1008 n.2 (9th Cir. 2017) (same). A § 3344 claim consists of the same elements, but also requires allegations of (5) "*knowing* use of the plaintiff's name, photograph or likeness for purposes of advertising or solicitation of purchases," and (6) "[a] 'direct' connection . . . between the use and the commercial purpose." *Eastwood*, 149 Cal. App. 3d at 417 (emphasis added); *see also Maloney*, 853 F.3d at 1008, n.2 (same). Specifically, § 3344 states:

> (a) Any person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent . . . shall be liable for any damages sustained by the person or persons injured as a result thereof. . . . (e) The use of a name, voice, signature, photograph, or likeness in a commercial medium shall not constitute a use for which consent is required under subdivision (a) solely because the material containing such use is commercially sponsored or contains paid advertising. Rather it shall be a question of fact whether or not the use of the person's name, voice, signature, photograph, or likeness was so directly connected with the commercial sponsorship or with the paid advertising as to constitute a use for which consent is required under subdivision (a).

3

Cal. Civ. Code § 3344.

Plaintiff alleged that Defendant used her image without consent to solicit users to register for their site and sign up for paid subscriptions. For example, Plaintiff alleged that Defendant non-consensually used her image on their website and that when users searched for her name on their site or clicked on her image, they were shown various commercial advertisements. *See* SAC ¶¶ 145-161. Plaintiff alleged that this use of her image in Defendant's advertising flow violated her right of publicity. *Id.* ¶¶ 182-87.

Defendant's motion to dismiss focuses on a narrow issue: whether Plaintiff Nolen adequately alleged that Defendant used her image for the purpose of advertising. *See* Docket No. 180 (Def.'s Mot. to Compel and Dismiss ("Mot.")) at 12. Defendant argues that Plaintiff's "theory of liability fails because it does not require that her name or photographs have ever been displayed in what the Second Amended Complaint calls an 'advertising technique[].'" Docket No. 185 (Reply in Supp. of Defs.' Mot. to Dismiss ("Reply")) at 2. Simply put, Defendant argues that their use of Plaintiff's image does not constitute a use for the purpose of advertising under § 3344 until her image is visually displayed (*e.g.*, through pixels on a user's computer monitor) in connection with an advertisement following a user's search. *See id.* at 1 (stating that a publication in advertising must be more than a "mere possibility of a future display in an advertisement"). Although Defendant states otherwise, they are arguing for a *de facto* requirement of third-party viewership for certain § 3344 claims—essentially, even if users *could* interact with Plaintiff's images as part of an advertising flow, Plaintiff's claims fail because she never alleges that any user ever *actually* viewed them in this way, and thus they were not visually used in a commercial advertisement. *See* Mot. at 11 ("[T]he theory of liability Plaintiffs have pleaded—that PeopleConnect violates Section 3344 by hosting their school yearbooks on Classmates.com, even if the photographs from those yearbooks never are shown to anyone, let alone shown to someone as part of a so-called advertisement—is not viable as a matter of law."); Reply at 2 (contending that Plaintiff's claims fail "regardless of what anyone saw").

The Court disagrees: Defendant commercially used Plaintiff's image the moment the image became a publicly accessible part of Defendant's advertising flow. To hold otherwise

4

1    would impose a visual display requirement that is at odds with the single publication rule of claim

2    accrual and that has no basis in the text or purpose of § 3344.  Moreover, even if Plaintiff's image

3    needed to have been visually displayed in Defendant's advertising flow following a user's search

4    in order for it to have been used for a commercial purpose, Plaintiff's claims would still survive

5    since she adequately alleged such a display.[3]

6    A.      Determining When An Image Is Commercially Used

7           Defendant argues that Plaintiff is wrong for contending that "she may prevail merely by

8    identifying an 'online advertising flow' on Classmates.com, even if her name or photographs were

9    never displayed in that flow."  Reply at 7.  Defendant is attempting to argue that until users click

10   on Plaintiff's image such that Defendant's advertisements appear, there has been no published

11   advertisement using Plaintiff's image.  This argument fails because (1) it is nonsensical to treat

12   date of publication separately from date of first commercial use and (2) the text and purpose of §

13   3344 precludes any definition of commercial use requiring the visual display and third-party

14   viewing of the commercially used image.

15          1.      Images are Commercially Used Upon Publication

16          The internet is not Schrödinger's cat, only existing once it has been seen.  Webpages do not

17   rest up in the ether until a viewer's click jolts them into being; rather, a webpage is published once

18   it is publicly accessible.  *See Oja v. U.S. Army Corps of Engineers*, 440 F.3d 1122, 1130 (9th Cir.

19   2006) (noting, when determining whether to apply the single publication rule, that state courts,

20   including in California, "have generally concluded [in the context of defamation claims] that the

21   posting of information on the web should be treated in the same manner as the publication of

22   traditional media"); *Guzman v. Shewry*, 552 F.3d 941, 956 (9th Cir. 2009) ("Because members of

23   the public can access information in the [database], [the agency's] reporting of [plaintiff's]

24   suspension to the [database] would constitute publication that deprives him of a protected liberty

25   interest."); *Reno v. ACLU*, 521 U.S. 844, 852-53 (1997) ("[T]he Web consists of a vast number of

---

[3] Defendant asserts that Plaintiff's UCL and unjust enrichment claims are derivative of her § 3344 claims and that if the § 3344 claim fails the other claims should fail, too.  Mot. at 12 n.4. Accordingly, because Plaintiff's § 3344 claim survives, her UCL and unjust enrichment claims survive, too.

...

1   documents stored in different computers all over the world. Some of these documents are simply
2   files containing information. . . . The Web is thus comparable, from the readers' viewpoint, to both
3   a vast library including millions of readily available and indexed publications and a sprawling
4   mall offering goods and services.").

5   Indeed, the Court, at *Defendant's exhortation*, applied the single publication rule to bar the
6   claim of former Plaintiff Wayne Tseng. *See* Docket No. 177.  The Court held that Plaintiff
7   Tseng's claim accrued "when his image became publicly available on the Classmates.com
8   website." *Id.* at 7.  Information is deemed published even if some predicate act is required to
9   access it, such as going to a library, getting through a paywall, or performing an online search.
10  *See Hebrew Acad. of San Francisco v. Goldman*, 42 Cal. 4th 883, 890, 173 P.3d 1004 (2007)
11  (finding an oral report published despite the fact that it was distributed to only a few libraries
12  since, "the single-publication rule applies . . . to publications like that in the present case that are
13  given only limited circulation and, thus, are not generally distributed to the public"); *Royal*
14  *Holdings Techs. Corp. v. IP Video Mkt. Info Inc.*, No. 2:20-cv-04093-SB-PLA(x), 2020 WL
15  8225666, at *4 (C.D. Cal. Dec. 18, 2020), *rev'd and remanded on other grounds*, No. 21-55048,
16  2022 WL 16832812 (9th Cir. Nov. 9, 2022) (describing certain articles as "published" that "were
17  made on [defendant's] website, which has some of its content behind a nonpublic paywall");
18  *Universal Ent. Corp. v. Aruze Gaming Am.*, Inc., No. 2:18-CV-00585-RFB-NJK, 2020 WL
19  8771657, at *1 (D. Nev. Dec. 9, 2020) (noting that plaintiff "discovered *behind a paywall* a third
20  public online news article *published* in November 2018" (emphasis added); *Bonilla v.*
21  *Ancestry.com Operations Inc.*, No. 20 C 7390, 2022 WL 4291359, at *3 (N.D. Ill. Sept. 16, 2022)
22  (applying the single-publication rule and declining to apply the continuing violation doctrine
23  where plaintiff claimed defendant "republishes his image by actively generat[ing] each
24  advertisement in response to a query by a specific user seeking information about [plaintiff]"
25  (internal citation and quotation omitted)).  Thus, Defendant published Plaintiff's image even
26  though accessing it requires a predicate search (something inherent to anything on the Internet –
27  the viewer must be directed to a URL).

28  As Plaintiff argues, it would be unjust and absurd for Plaintiff's cause of action to

6

accrue—and potentially expire—before she could bring a claim, a possibility that is endemic to Defendant's proposed construct. *See* Docket No. 184 (Pls.' Opp'n to Def.'s Mot. to Compel and Dismiss ("Opp'n")) at 6-7. As a "cause of action accrues when the claim is complete with all of its elements," *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1054 (9th Cir. 2008) (quoting *Slovensky v. Friedman*, 142 Cal. App. 4th 1518, 1528 (2006), *as modified on denial of reh'g* (Oct. 12, 2006)), Defendant cannot argue that the statute of limitations accrued in one breath and that Plaintiff's claims are not yet ripe in the next. Like in the real word, Defendant cannot have its virtual cake and eat it too.

Moreover, to hold that images are only commercially used once they are actually seen by a consumer makes little practical sense. It would be as if an image within a newspaper advertisement were not commercially used until a customer paid their quarter, unlocked the newsrack, opened the paper, began reading, opened the page containing the relevant circular, and saw it. Defendant's construct makes even less sense in the age of the Internet. As noted above, a webpage openly published on the Internet still requires a viewer to click on its URL before it may be seen. The notion that there is no publication or commercial "use" upon placing the image on the open Internet ignores the terms and purpose of Cal. Civ. Code § 3344, which is predicated upon "knowing[] use[] . . . for purposes of advertising." The point of using Plaintiff's image for advertising is to try to enhance Defendant's business revenues by increasing the odds of sales. Here, Defendant uses Plaintiff's image as bait, betting on the *chances* that Plaintiff's image will be seen by *some* viewers, some of whom will be thereby induced to further click and subscribe to Defendant's product. So viewed, appropriation is not contingent on the ultimate success Defendant's campaign (actual viewership and resulting sales).

    2. <u>§ 3344 Has No Requirement That A Commercial Image Be Visually Displayed Or Viewed By Third Parties</u>

        a. <u>Text and Purpose of § 3344</u>

Plaintiff's image was "used" for a commercial purpose. The plain meaning of "use" as defined in Black's Law Dictionary is "[t]o make use of, to convert to one's service, to avail one's self of, to employ." *Use, Black's Law Dictionary* (Revised 4th ed. 1968). As discussed above,

7

Plaintiff's image was used essentially as bait, to attract potential viewers and turn them into customers. Whether it succeeded or not, the image was used for the purpose of increasing Defendant's sales. Defendant has not provided a California case where actual third-party viewership has been deemed an integral part of a § 3344 claim. *See, e.g.*, *Eastwood*, 149 Cal. App. 3d at 418 (analyzing whether plaintiffs sufficiently pled a § 3344 claim without reference to third-party viewership).

This lack of analysis is understandable, not only because Defendant's argument defies the common sense definition of "use" for commercial purposes and the meaning of advertising, but also because, as this Court previously stated regarding the purpose of § 3344:

> [t]he gist of the cause of action in a privacy case is not injury to the character or reputation, but a direct wrong of a personal character resulting in injury to the feelings without regard to any effect which the publication may have on the property, business, pecuniary interest, or the standing of the individual in the community. . . . *The right of privacy concerns one's own peace of mind* . . . .

Docket No. 76 at 25 (emphasis added) (quoting *Miller v. Collectors Universe, Inc.*, 159 Cal. App. 4th 988, 1002 (2008) (quoting Assem. Com. on Judiciary, Analysis of Assem. Bill No. 826 (1971 Reg. Sess.) June 14, 1971, p. 1.)); *see also Miller*, 159 Cal. App. 4th at 1005 ("Here, the harm Miller suffered, and which section 3344(a)'s minimum statutory damages were intended to remedy, was the alleged injury to his mental feelings and peace of mind . . . ."). Such harm "is mental and subjective." *Miller*, 159 Cal. App. 4th at 1005 (quoting *Dora v. Frontline Video, Inc.*, 15 Cal. App.4th 536, 541-42 (1993)); *see also Merriam-Webster Online Dictionary*, https://www.merriam-webster.com/dictionary/peaceofmind (last visited June 20, 2023) (defining peace of mind as "a feeling of being safe or protected"). § 3344 claims concern the anguish and helplessness individuals feel when their privacy is stripped away and their image published for commercial purposes without their consent. Visual display and third-party viewership do not negate this anguish. The loss of agency and control over her image, not only the visual display, causes Plaintiff harm.

Other state courts with similar right of publicity statutes have addressed the third-party viewership issue and unequivocally held that third-party viewership is not an element of a right of

8

publicity claim. The Illinois Right of Publicity Act [IRPA] governs right of publicity claims in Illinois. Much like § 3344, the IRPA is related to the common law claim of appropriation of likeness. *See Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001) ("The remedies provided for under California Civil Code § 3344 complement the common law cause of action; they do not replace or codify the common law."); *Lukis v. Whitepages Inc.*, 549 F. Supp. 3d 798, 805 (N.D. Ill. 2021) ("[T]he Seventh Circuit and the Appellate Court of Illinois unsurprisingly have recognized the continuity between the common law and the IRPA."). The IRPA states that "[a] person may not use an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent from the appropriate person or persons . . . ." 765 Ill. Comp. Stat. Ann. 1075/30. "Commercial purpose" is defined as "the public use or holding out of an individual's identity . . . for purposes of advertising or promoting products." 765 Ill. Comp. Stat. Ann. 1075/5. Illinois courts have held that while "*public* use" requires some sort of "disseminat[ion] to the public," to "'hold out' is 'to make out to be: represent.'" *Trannel v. Prairie Ridge Media, Inc.*, 2013 IL App (2d) 120725, ¶¶ 21-22, 987 N.E.2d 923, 930 (emphasis added) (quoting *Webster's Third New International Dictionary* 1079 (1993)). Thus, in the context of the IRPA, holding out merely requires "the representation [] of an individual's identity on or in connection with certain [commercial] activities." *Id.* (stating that the IRPA "prohibits the holding out—meaning the representation—of an individual's identity . . . . The 'holding out' must have occurred, *inter alia*, on or in connection with the offering for sale or sale of a product, merchandise, goods, or services."). Following from this definition, "the IRPA . . . does not impose a viewership requirement. Rather, the pertinent liability issues are whether [defendant] held out a putative class member's identity to sell subscriptions, and whether such use served a commercial purpose. It follows that a putative class member may recover *regardless of whether any user ultimately viewed the website's registration page after searching for that putative class member*." *Fischer v. Instant Checkmate LLC*, No. 19 C 4892, 2022 WL 971479, at *11 (N.D. Ill. Mar. 31, 2022) (emphasis added);[4] *see also Lukis v. Whitepages Inc.*, 542 F. Supp.

---

[4] The *Fischer* court did not certify the "Search Results Class." *See Fischer*, 2022 WL 971479, at *12. Defendant claims that the court held that actual publication under Illinois law "meant a class

9

3d 831, 836-38 (N.D. Ill. 2020) (rejecting the proposition that defendants did not commercially use plaintiff's information under the IRPA where users could (1) search for plaintiff's name, (2) generate a free preview of plaintiff's information from which plaintiff "*could be* uniquely identified," and (3) be shown connected advertisements for other services (emphasis added)). This Court sees no material distinction between "use" under § 3344 and "hold out" under the IRPA.

The language of the Ohio Right of Publicity Law [ORPL] even more closely tracks the language of § 3344. The ORPL states that "a person shall not use any aspect of an individual's persona for a commercial purpose." Ohio Rev. Code Ann. § 2741.02(A). "'Commercial purpose' means the use of or reference to an aspect of an individual's persona . . . [f]or advertising or soliciting the purchase of products, merchandise, goods, services, or other commercial activities . . . ." *Id.* § 2741.01(B). Like § 3344, the ORPL is related to the common law tort of misappropriation of likeness. *See ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 929, n.15 (6th Cir. 2003) ("In 1999, the right of publicity was codified in the provisions of Ohio Revised Code Chapter 2741."). In *Knapke v. PeopleConnect Inc*, the court rejected the exact same argument that PeopleConnect makes here:

> Classmates argues that Knapke has not alleged a "use" of her persona in violation of the Law because she has not alleged that anyone else has seen this same image. Classmates relies on common law claims that require some allegation that members of the public saw the offending image. Classmates fails to explain why this element from common law false light claims should be imputed into the Right of Publicity Law. While courts may look to common law claims to help understand the Right of Publicity Law, none has imputed a new element into the Law from common law tort. The Court finds no valid basis to write a new provision into the Right of Publicity Law. And accepting the allegations of the Complaint as true, Knapke has alleged a "use" of her image—she alleges that she discovered Classmates using her image to market its products and services on the internet, which is available to the public at large. This satisfies her burden under the Law.

---

could be composed only of those whose likenesses actually appear on 'static' webpages, as opposed to those whose likenesses could be displayed based on user searches." Reply at 5. *Fischer*, however, stands for no such proposition; rather, the court held that the Search Results Class failed to meet the superiority requirement of Rule 23(b) since plaintiff's methodology only identified individuals who currently appeared in defendant's background reports, not individuals who had appeared in the past, as required by the proposed class definition. *See Fischer*, 2022 WL 971479, at *12.

10

1  *Knapke v. PeopleConnect Inc.*, 553 F. Supp. 3d 865, 876 (W.D. Wash. 2021), *vacated and remanded on other grounds sub nom. Knapke v. PeopleConnect, Inc*, 38 F.4th 824 (9th Cir. 2022) (internal citations omitted).  Although that decision was vacated on other grounds,[5] the Court finds its logic persuasive; there is no reason to write a new provision into § 3344.

Therefore, even if an advertisement connected to Plaintiff's image were never generated by users, the fact that the advertisement *could* be generated at any point by any person is the gravamen of Plaintiff's complaint.  This is what is reflected in § 3344's lack of visual display and third-party viewership requirements, and it is what is reflected in the Court's decision.

b. <u>Cases Cited By Defendant Are Inapposite</u>

Defendant provides no cases that convince the Court otherwise.  Defendant spills much ink discussing one case, *Cross v. Facebook, Inc.*, which simply holds that, to be liable, the defendant must be the entity who uses a plaintiff's image.  In *Cross*, the plaintiff sued Facebook under § 3344 and alleged that Facebook ran advertisements adjacent to Facebook pages run by third parties who had incorporated plaintiff's image onto their page without plaintiff's consent.  *Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190, 197, 222 Cal. Rptr. 3d 250, 257 (2017).  The court dismissed plaintiff's claims and held that "[t]he gravamen of [plaintiff's] complaint is that Facebook displayed unrelated ads from Facebook advertisers adjacent to the content that allegedly used [plaintiff's] name and likeness—content, [plaintiff] concedes, created by third-party users.  He has not, and cannot, offer any evidence that Facebook used his name or likeness in any way." *Id.* at 210.  Thus, as Plaintiff notes, *Cross* "turn[s] on the identity of the publisher—not the viewer."  Opp'n at 4.  Plaintiff indisputably alleged that it is Defendant, *not* a third-party entity who is using Plaintiff's image in their advertisements, and that these advertisements benefit Defendant.  *See* SAC ¶ 93.  *Cross* is inapposite to Defendant's "use" argument.  So is *Perfect 10, Inc. v. Google, Inc.*, to which Defendant cites and which stands for the same proposition as *Cross*.

---

[5] The Ninth Circuit found that "Washington law, not Ohio law, governs the threshold question of arbitrability" and that more discovery was needed to determine if plaintiffs were bound to arbitration.  *Knapke*, 38 F.4th at 828.  However, regarding PeopleConnect's argument that Defendant failed to state a claim under the ORPL (as well as other arguments not brought up on appeal), the court notes that the "district court rejected each of these arguments, and these issues are not before us on appeal." *Id.* at 830, n.2.

1    *See Perfect 10, Inc. v. Google, Inc.*, No. CV 04-9484 AHM SHX, 2010 WL 9479060, at *13 (C.D.

2    Cal. July 30, 2010), *aff'd*, 653 F.3d 976 (9th Cir. 2011) (finding that plaintiff was unlikely to

3    succeed on the merits of their § 3344 claims where Google hosted, but did not publish, webpages

4    containing individuals' likenesses, since "'[c]ontributing' to someone's violation of something is

5    not the same as actually 'violating' it").

6          Several further cases to which Defendant cites simply state that images are not

7    commercially used where hypothetical viewers would only see them *after* the connected product is

8    purchased. *See, e.g.*, *Johnson v. Harcourt, Brace, Jovanovich, Inc.*, 43 Cal. App. 3d 880, 895

9    (1974) (finding the use of an image within a textbook was not sufficiently connected to the

10   textbook's sale); *Huston v. Hearst Commc'ns, Inc*, 53 F.4th 1097, 1099 (7th Cir. 2022) (similarly

11   holding that "any use or holding out [of plaintiff's identity] must either accompany an offer to sell

12   or precede the sale, but it cannot follow the sale"). However, the timing of the Classmates.com

13   advertisements is not at issue here, as Plaintiff alleged that Defendant's use of her likeness

14   accompanied their advertisements. *See* SAC ¶ 161. Plaintiff's image was a predicate to the

15   further acts of the viewer in purchasing the subscription from Defendant. Nor does it matter that

16   Plaintiff's image only appears after a user commences a search. *See Spindler v. Seamless

17   Contacts*, Inc., No. 4:22-CV-00787-KAW, 2022 WL 16985678, at *5 (N.D. Cal. Oct. 24, 2022),

18   *appeal pending*, No. 22-16772 (9th. Cir.) (finding that "Plaintiff's name or likeness appearing in a

19   string of search results on the same page as a paywall option" can constitute an unlawful

20   advertisement). Much like how material that is only accessible behind a paywall, in a select few

21   libraries, or after an antecedent search can still be considered published, the fact that Plaintiff's

22   likeness can only be found on Classmates.com after a predicate search does preclude her image

23   from being connected to an unlawful advertisement. It still played a role in the expected flow

24   from advertising to the ultimate sale.

25         Defendant's most on-point case, while out of circuit, involves facts similar to the case at

26   bar. In *Fry v. Ancestry.com Operations Inc*, plaintiff alleged that Ancestry.com used his name and

27   school yearbook photo without his consent "to advertise its subscription-based genealogy

28   website." *Fry v. Ancestry.com Operations Inc.*, No. 3:22-CV-140 JD, 2023 WL 2631387, at *3

(N.D. Ind. Mar. 24, 2023). The advertising flow in which Mr. Fry's image was used is similar to Classmates.com's advertising flow:

> When a person visits Ancestry.com, a public landing page allows the visitor to search by name and location for any person. The Ancestry website then delivers a list of yearbook photos it believes may correspond to the person of interest. The results page also includes a pop-up window that says, "There's more to see" about the person of interest and encourages the visitor to "Sign Up Now." Clicking through the pop-up takes the visitor to a webpage where they can select a paid subscription plan and begin their free trial.

*Id.* at *1. As with Ms. Nolen's image, Mr. Fry's image requires an antecedent user search before it is displayed. *See id.* at *2 ("Mr. Fry is not a subscriber or user of Ancestry, but his Indiana high school yearbook photos are available for view on Ancestry to those who have searched for him."). And, similar to what occurred here, a question arose regarding whether any individuals actually searched for Mr. Fry's image on Ancestry.com. *See id.* at *5.

The relevant statute in *Fry* was Indiana's Right of Publicity Statute [IRPS], which states that "[a] person may not use an aspect of a personality's right of publicity for a commercial purpose during the personality's lifetime." Ind. Code Ann. § 32-36-1-8. "'[C]ommercial purpose' means the use of an aspect of a personality's right of publicity . . . . [f]or advertising or soliciting purchases of products, merchandise, goods, services, or for promoting commercial activities." *Id.* § 32-36-1-2.

The *Fry* court denied defendant's motion to dismiss but, *in dicta*, postulated that plaintiff neither had standing to bring his claim nor satisfied the elements of the IRPS. *See id.* at *5-6 ("It is silly to complain at length that one is devastated by the *unauthorized* use of his yearbook photo to sell a product where *he orchestrated the use* [by his attorneys, who may have been the only individuals who searched for and saw his photo on Ancestry.com,] and the injury may not have occurred but for his initiative."). *Fry*'s standing analysis, however, is inapposite. There, "Mr. Fry ha[d] stated the injury is the psychological stress caused by worrying that his likeness may be used, not the risk itself." *Fry*, 2023 WL 2631387, at *5. Given this, the court cautioned that "[p]laintiffs 'cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending.'" *Id.* (quoting *Clapper v.*

13

*Amnesty Int'l USA*, 568 U.S. 398, 416 (2013)).

In contrast, Plaintiff's claims do not result solely from an attorney manufactured event. As alleged under § 3344 here, the commercial use of Plaintiff's publicly accessible image stems in part from the loss of control over her image. *See* SAC ¶ 161 (alleging that Plaintiff "believes her likeness is rightly hers to control. Classmates' illegal use has left her worried and uncertain about her inability to control how her name and likeness is used. Ms. Nolen feels that Classmates' use of his photograph represents an alarming invasion of her privacy"). Such an injury is sufficient to establish standing; "[o]ur circuit has specifically affirmed findings of concrete injury, and standing to sue, when plaintiffs were deprived of procedures that protected privacy interests without any attendant embarrassment, job loss, stress or other additional injury." *Patel v. Facebook Inc.*, 290 F. Supp. 3d 948, 954 (N.D. Cal. 2018); *see also Spindler*, 2022 WL 16985678, at *4 ("Plaintiff identifies four injuries: (1) misappropriation of his intellectual property (in the form of likenesses, names, and other information); (2) that Defendant unjustly profited from his likeness; (3) the denial of the right to control commercial use of his name and persona; and (4) mental and emotional injury. Courts in this district have overwhelmingly found that plaintiffs in similar circumstances had sufficiently pleaded a cognizable injury. Here, the undersigned finds that Plaintiff's four identified injuries satisfy the injury in fact requirement . . . ." (internal citation omitted)). Thus, the *Fry* court's standing analysis regarding plaintiff's claim for psychological distress is not persuasive.[6]

To be sure, the *Fry* court does go through a brief statutory analysis of the IRPS. In this analysis—which bleeds into the court's discussion on standing—the court states that:

> [Plaintiff] argues that this action is distinct from [the] *TransUnion* [case on standing] because unlike defamation, misappropriation does not depend on disclosure to a third party, so there is no need for his photo to have been actually used. This misses the mark; while there is no disclosure requirement, both the statute and the common law require the *use* of a person's likeness; there is no liability for mere possession of a person's photo. *See* Ind. Code § 32-36-1-8(a). And it is difficult to think of a use "for advertising" or "on or in connection with a product" that does not involve disclosure to some

---

[6] Additionally, this Court has already held the Plaintiff has standing for her economic loss claim. *See* Docket No. 76 at 22-24.

14

> third party; Mr. Fry certainly has not alleged one. *See* Ind. Code § 32-36-1-2. So, while the Court does not intend to subject Mr. Fry's claims to a defamation analysis, his claim is like all others in that *something* must have actually happened (other than the decision to sue) before liability can accrue. *See Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909, 911 (7th Cir. 2017) ("as otherwise the federal courts would be flooded with cases based not on proof of harm but on an implausible and at worst trivial risk of harm").

*Fry*, 2023 WL 2631387, at *6. Although the language of the IRPS is similar to the language of § 3344, the Court is not convinced by *Fry*'s cursory analysis. This analysis, made in *dicta*, cites no precedent regarding the IRPS or similar statutes and appears to rely upon incorrect suppositions. Here, as in *Fry*, *something* did in fact allegedly happen (other than the decision to sue): Plaintiff's image was published by Defendant without her consent as part of an advertising flow. This publication rose above "mere possession" and is enough to establish a commercial use under § 3344.[7]

Other cases Defendant cites are completely inapposite and are also out of circuit. *See, e.g.*, *Jackson v. Playboy Enters., Inc.*, 574 F. Supp. 10, 13 (S.D. Ohio 1983) (*Knapke*, 553 F. Supp. 3d at 876, explicitly declined to apply this common law case to the ORPL); *Gautier v. Pro-Football, Inc.*, 106 N.Y.S.2d 553, 555-56 (N.Y. App. Div. 1951) *aff'd*, 107 N.E.2d 485 (N.Y. 1952) (discussing the strength of the connection between advertisements and plaintiff's intellectual property, an issue which this Court has already decided is a question of fact in Docket No. 76 at 27).

Thus, Defendant commercially used Plaintiff's image the moment the public was able to access it in connection with its accompanying advertisements.

B.  Plaintiff's Allegations Of Third-Party Viewership

In any event, Plaintiff did in fact allege that third parties viewed her image and the associated advertisements. Plaintiff stated that:

> PeopleConnect provides a publicly accessible webpage on which users may search, *and have searched*, by name and/or location for Ms. Nolen and other Class members. Users who searched for Ms. Nolen received in response a list of results, which include low-resolution photographs depicting Ms. Nolen as a child. Users who

---

[7] Similarly, Fry's image was published by Ancestry.com in their advertising flow, which should have been enough to establish use under the IRPS.

15

> clicked on Ms. Nolen's photographs seeking higher-resolution versions, or who attempted to view more than a proscribed number of photographs, received a pop-up message asking the user to register with the site and agree to the Terms of Service. The user was required to interact with the pop-up to continue viewing Ms. Nolen's photographs. After a user agreed to the Terms and registered with the site, PeopleConnect displayed a screen soliciting the purchase of a paid subscription to Classmates.com.

SAC ¶¶ 89-92 (emphasis added). Plaintiff Nolen explicitly stated that users "have searched, by name and/or location for Ms. Nolen," that Defendant displayed an image of Ms. Nolen to those users, and that some number of those users further engaged with the website such that they caused Defendant's advertisements to appear as pop-up messages on their screens. Defendant argues that Plaintiff's allegation is a "compound statement" that fails to specify whether "have searched" refers to Plaintiff or to the other class members. However, reading the complaint literally, and drawing all reasonable inferences in favor of Plaintiff, the Court finds that "have searched" refers to both Plaintiff and to all other class members.

Defendant maintains that Plaintiff's allegations of third-party viewership are contradictory since she elsewhere claims, among other similar statement, that her allegations "are not based on direct observation of the Classmates.com website." Reply at 8 (quoting SAC ¶ 87). But, as Plaintiff explained during oral argument, Plaintiff did not make these statements when discussing how she knew that third parties viewed her image; rather, Plaintiff made these statements to reinforce that counsel and Ms. Nolen took no actions that would subject Ms. Nolen to binding arbitration. Plaintiff's statements that Ms. Nolen and her counsel did not personally view the Classmates.com website do not contradict her claim that third parties viewed her image and the connected advertisements.

Defendant further challenges Plaintiff's statements as conclusory. *Id*. However, Plaintiff's allegations regarding users' searches are specific statements of predicate facts, *not* ultimate facts or legal conclusions. This is enough to make Plaintiff's claims plausible. *See Ashcroft*, 556 U.S. at 678 (stating that claims must be supported by enough factual allegations to be plausible and that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

Defendant finally argues that although Plaintiff referenced users searching for her, she did

16

not reference users searching on the "Free Member search engine" and thus cannot bring claims for the banner ads specifically associated with this search engine. Reply at 13. However, the term "search" used by Plaintiff is capacious enough to include many types of searches. *See* SAC ¶ 89 ("PeopleConnect provides a publicly accessible webpage on which users may search, and have searched . . . ."). Plaintiff also alleged that "Classmates also displays banner ads promoting Classmates.com subscriptions adjacent to the *search* results containing Ms. Nolen's photograph." SAC ¶ 154 (emphasis added). From this, the Court draws a reasonable inference that Ms. Nolen's allegations state that users searched for her on the Free Member search engine and saw her image in connection with the banner ads associated with the Free Member search engine.

Thus, drawing all inferences in the light most favorable to Plaintiff, the SAC adequately alleged that third parties searched for Ms. Nolen's image and then viewed it in connection with Defendant's advertisements for Classmates.com. Plaintiff therefore alleged third-party viewership of her image and its visual display in connection with Defendant's solicitations. While such a pleading is unnecessary in this Court's view, it is sufficient. Plaintiff only needed to plead that Defendant published her image in connection with their advertising flow, which she did. Plaintiff thus adequately pled her claim.

## V. CONCLUSION

For the foregoing reasons, the Court denies Defendant's motion to dismiss.

This order disposes of Docket No. 180.

**IT IS SO ORDERED**.

Dated: June 30, 2023

_____
EDWARD M. CHEN
United States District Judge

17